No. 20751.

GLADYS L. McMILLAN *v.* JOHN HAMMOND,
SHERIFF OF THE COUNTY OF DOUGLAS.
(404 P.2d 549)

Decided July 26, 1965.     Rehearing denied August 30, 1965.

DON B. OLIVER, LILA I. LUDLAM, for plaintiff in error.

FOARD, FOARD & FOUTCH, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as the plaintiff and to defendant in error as the defendant or as the sheriff. Nelson Rangell, a physician, and the Board of County Commissioners of Douglas county were also named defendants in the instant action. On motion of their attorney they were dismissed from the action and no assignment of error is directed to the dismissal of the case as to them. The plaintiff sought to recover damages resulting from the death of her husband which occurred at a time when he was being held by the sheriff in the county jail at Castle Rock, Colorado.

In her complaint the plaintiff alleged that the death of her husband was caused by the "wrongful act, neglect or default" of the defendant, and that under the provisions of C.R.S. 1963, 41-1-2, she was resultantly entitled to recover damages. At the conclusion of the evidence offered on behalf of the plaintiff the trial court ruled, as a matter of law, that the evidence was insufficient to submit the case to the jury, and the action as to the sheriff was therefore dismissed.

The argument of plaintiff's counsel for reversal of the judgment is presented under two captions as follows:

"I. A sheriff must exercise reasonable and ordinary care and owes a duty to a prisoner to keep him safely, to protect him from harm and care for the preservation of his life and in health. For failure in such duty the sheriff is liable personally.

"II. The Court may not as a matter of law dismiss a case even though there is no dispute as to the facts if the conclusion to be drawn from the facts upon which the controversy arises is such that honest men might differ and arrive at different results. In that event the question should be left for determination by the jury."

A somewhat detailed analysis of the evidence is essential to a determination of the questions involved. Robert A. McMillan was born in 1918 and married the plaintiff in 1950. Immediately prior to the events resulting in the death of Mr. McMillan, he and the plaintiff resided

together in Denver. The deceased was a mechanic specializing in automobile brake work, and earned approximately $100 per week. From August 1958 through December of that year he was a patient in the Colorado State Hospital, his hospitalization resulting from an excessive consumption of alcohol. Since his release from the state hospital in December 1958, he was steadily employed, and the undisputed evidence showed that he had overcome the drinking problem.

On January 13, 1961, the plaintiff went to Castle Rock on receipt of information from the Denver Police Department that her husband was being held there by the sheriff. Upon arrival at the jail in Castle Rock at about 11:30 A.M., she was informed by the defendant that her husband had been found prowling. The sheriff went inside the jail to complete arrangements for an interview between the plaintiff and her husband. The record shows that the following then took place:

"Q. What was then done?

"A. The Sheriff unlocked the cell door and he walked in. And he came out and he said, 'Well, something else has happened.'

"Q. What else was said?

"A. I couldn't tell you exactly what was said at that moment.

"Q. Then what was done?

"A. We both went in — Jim Copeland and I and the Sheriff went into the cell.

"Q. When you went in what did you find with reference to your husband?

"A. I found my husband laying on the floor on his back and his skull was all busted open. His eye extended from his head quite a bit. His head was all mashed in and he had — looked like a real hard knot behind the ear.

"Q. Which ear?

"A. I couldn't say exactly, in the excitement, what ear it was. Really, I couldn't. I wouldn't want to say.

But I know that he was bleeding from the ears and mouth and nose where it was all mashed in. It was bleeding also. But he was on the back when I saw him."

A doctor was called who very shortly thereafter pronounced McMillan dead. Upon trial, however, this doctor was not called as a witness, nor was any evidence offered, medical or otherwise, as to the cause of death.

The defendant saw the decedent at about 11:00 P.M. on the night of January 12, 1961, at a ranch house in Douglas county. The deceased and the rancher, one Thacker, were coming out of the house. Thacker carried a rifle and the sheriff commanded both of them to stop. The deceased started to run and the sheriff fired his revolver in the air. Thereupon Thacker called to him, "Don't shoot him, I have already shot him." After a short chase the sheriff brought McMillan back and started to question him but he made no answers to any of the questions. Finding that McMillan had been shot in the leg the sheriff took him to the office of Dr. Rangell in Castle Rock. The evidence by the sheriff concerning the events in the doctor's office is as follows:

"Q. You don't recall that Dr. Rangell told you that he couldn't treat him; that the projectile might have shattered the bone; that he needed treatment at a hospital?

"A. I believe he said that it was imbedded and he couldn't treat it at his office.

"Q. And while he was being treated at Dr. Rangell's office the decedent suddenly got up and decided he didn't want any treatment?

"A. He jumped up and acted like he was going to hit the doctor and said, 'You are just fooling around; I don't want to be treated here.' — something to that effect.

"Q. And, do you know what medication Doctor was giving at the time?

"A. No, he was cleansing the wound. I don't know what it was.

"Q. And Dr. Rangell then stated to him, 'You refuse treatment?' 'Take him back to the cell.'

"A. As far as I remember he stated, 'He has refused treatment; I can't doctor this man.' But I don't recall that he told me to take him back to the cell.

"Q. And you did take him back?

"A. Yes."

Decedent was placed in the jail cell "sometime after midnight."

The plaintiff testified that the sheriff told her it was his belief that deceased was either a mental case or a narcotic addict. He had on his person a wallet, some car keys, and a key chain containing a plate upon which appeared his name, address and phone number. The wallet contained certain identifying cards including one indicating that he had been a patient in the Colorado State Hospital at Pueblo, which card he was required to carry on his person at all times. A deputy was in charge of the sheriff's office during the morning of January 13, and when the plaintiff arrived the defendant was not at the jail. He arrived, however, a few minutes later.

From the time that McMillan was placed in the jail cell he was its sole occupant. The cell contained a toilet stool, a washbowl and two bunks. The cell door is about four feet from the entrance to the sheriff's office. At least one of the sheriff's deputies was on duty at all times. The door leading into the cell is made of solid steel. There is an "observation porthole" about twelve inches square in one of the walls of the cell. There is evidence tending to prove that McMillan refused breakfast when it was offered to him, and that a lunch had been placed in his cell which he had not eaten.

In ordering the entry of judgment for the defendant the trial court said, inter alia:

"* * * The Court finds that the evidence failed to

establish negligence as a matter of law as to the defendant, John Hammond, as Sheriff of the County of Douglas, and as to the defendant, Nelson Rangell.

"And the Court finds that the evidence fails, as a matter of law, to establish negligence as the proximate cause of the death."

■ The legislature has imposed the following duties, inter alia, upon a sheriff (C.R.S. 1963, 35-5-11):

"The sheriff shall have charge and custody of the jails of his county, and of the prisoners in the same, and shall keep them himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable."

Generally, the rule applicable to the liability of a sheriff for injuries to prisoners under his control is stated in 72 C.J.S. Prisons § 13, where we find:

"A jailer or warden may be liable for an injury proximately resulting to a prisoner from a breach of duty with respect to such prisoner.

"A jailer or warden, or sheriff acting as such, may be liable for an injury proximately resulting to a prisoner from a breach of duty with respect to the prisoner, as, for example, a breach of duty to exercise due care for the safety of a prisoner generally, to keep the jail sanitary and warm, or to furnish food. * * *"

■ We agree with the trial court in its conclusion that the evidence offered by the plaintiff failed to establish any breach of a duty owed by the defendant to the husband of the plaintiff. There was no evidence that any negligence of the defendant proximately caused McMillan's death, and no showing was made that the sheriff failed to exercise reasonable care for his safety.

■ The cases cited by counsel for the plaintiff, in which sheriffs were held responsible for injuries received by prisoners while held in jail, are all clearly distinguishable upon the facts from the instant case. We think the following statement from Prosser, *Law of Torts* (2nd Ed.), p. 165, is applicable to this case:

"The culpability of the actor's conduct must be judged

in the light of the possibilities apparent to him at the time, and not by looking backward 'with wisdom born of the event.' The standard must be one of conduct rather than of consequences. It is not enough that everyone can see now that the risk was great, if it was not apparent when the conduct occurred. * * * No man can be expected to guard against events which are not reasonably to be anticipated, or are so unlikely that the risk would commonly be disregarded * * *."

The judgment is affirmed.

Mr. Justice Sutton and Mr. Justice Schauer concur.