No. 87-220

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

LEE SIMMONS, KEN SIMMONS, and
COLLEEN SIMMONS,

Plaintiffs and Appellants,

-vs-

L. V. JENKINS, JR., et al.,

Defendants and Respondents.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable R. C. McDonough, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stephens Law Firm; Robert L. Stephens, Jr., Billings,
Montana

For Respondent:

Moulton, Bellingham, Longo & Mather; W.S. Mather,
Billings, Montana
Lucas & Monaghan; Thomas M. Monaghan, Miles City,
Montana

Submitted on Briefs: Jan. 14, 1988

Decided: February 29, 1988

Filed: FEB 2 9 1988

*Ethel M. Harrison*

Clerk

The Hon. William E. Hunt, Sr. delivered the Opinion of the Court.

This is an appeal from the granting of two summary judgments by the District Court, Sixteenth Judicial District, County of Rosebud. We affirm.

Appellants raise three issues on appeal:

1. Did the District Court err in granting judgment in favor of the First State Bank of Forsyth even though there existed material issues of fact which could have allowed the jury to find in favor of Simmons?

2. Did the District Court err in granting summary judgment in favor of Connecticut Mutual Life Insurance Company even though there were material issues of fact that could have allowed the jury to find in favor of Simmons?

3. Should both summary judgments be reversed based upon the failure of the District Court to set forth any reasons or rationale for granting the summary judgments?

Following is a general overview of the relevant facts. More facts will be supplied as necessary throughout the opinion.

On October 29, 1982, the appellants, the Simmons, executed a contract for deed with defendant Dunning Ranch Company (owned by James and Elsie Dunning) for the portion of the Dunning ranch in Rosebud and Custer Counties known as the home place or headquarters unit. The negotiations took place between the Dunnings and the Simmons directly and through a realtor, Ward Fenton. In 1979, the Dunning Ranch Company had mortgaged its entire land holdings to defendant Connecticut Mutual Life Ins. Co. (CML). Before the loan was made a local mortgage banking company, Hall & Hall, made an appraisal of two of the three units making up the Dunning properties. The

home place was one of the units appraised. The appraisal showed that the two parcels examined would support a total of 331 cow and calf pairs (animal units). Hall & Hall is a correspondent mortgage banker for CML and originates its loans in the Rosebud area. In addition to the mortgage, the Dunning Ranch Co. had loans from the First State Bank of Forsyth (First Bank). On October 29, 1982, through a memorandum of agreement, First Bank agreed to lend the appellants money should the Dunning Ranch Co. default on the mortgage payments for the land being acquired by appellants.

Appellants have sued for fraud alleging that the Dunnings represented that the home place alone would carry 250 head of cattle when they knew in fact that it would not. They have named First Bank and CML as liable under the theory of constructive fraud. Both First Bank and CML made motions for summary judgment which the District Court granted. The Simmons appeal.

Issue I

As their first issue, appellants contend that the District Court committed error when it granted respondent First Bank's motion for summary judgment because there existed disputed issues of material fact.

On motions for summary judgment, pursuant to Rule 56, M.R.Civ.P., the party making the motion has the burden of showing lack of any genuine issue of material fact. The movant's burden is quite strict, requiring him to make a showing that

> "'[it] is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. * * *'" Kober & Kyriss v. Stewart & Billings Deaconess Hospital, 148 Mont. 117, 122, 417 P.2d 476, 478.

Harland v. Anderson (1976), 169 Mont. 447, 450, 548 P.2d 613, 615.

The party opposing the motion then has a similar burden to show that an issue of material fact does exist. This party must set forth specific facts and cannot rely on speculative, fanciful, or conclusory statements. Kronen v. Richter (Mont. 1984), 683 P.2d 1315, 1318, 41 St.Rep. 1312, 1315; National Gypsum Co. v. Johnson (1979), 182 Mont. 209, 212 & 213, 595 P.2d 1188, 1189 & 1190; Cheyenne Western Bank v. Young (1978), 179 Mont. 492, 497, 587 P.2d 401, 404; Barich v. Ottenstror (1976), 170 Mont. 38, 42, 550 P.2d 395, 397. However, the opposing party will be indulged to the extent of all inferences which may be reasonably drawn from the record. Jenkins v. Hillard (1982), 199 Mont. 1, 5, 647 P.2d 354, 356; Equity Cooperative Ass'n. v. Bechtold (1977), 173 Mont. 103, 105, 566 P.2d 793, 794.

Appellant argues that there was a breach of the fiduciary duty or at least the duty of good faith and fair dealing between the Simmons and First Bank and that said breach constitutes constructive fraud pursuant to § 28-2-406, MCA. The statute reads as follows:

Constructive fraud consists in:

(1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

(2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

The appellant bases his argument on several allegations: that First Bank was aware of the sale and had advised the Dunnings to sell; that First Bank knew liquidation of the farm corporation was near and even suggested the terms of sale; that the Bank had a loan commitment to the appellants which was an inducement to buy the farm; and that the Bank

- 4 -

would benefit from the sale by a reduction in the Dunning's loan.

The relationship between a bank and its customer usually does not give rise to a fiduciary duty. Deist v. Wachholz (Mont. 1984), 678 P.2d 188, 193, 41 St.Rep. 286, 290. There is an exception, however, when the Bank is thrust beyond the simple role of creditor and into the role of an advisor. In Deist, we held that a bank officer is vested with a fiduciary duty were there is a long history of dealing with the bank and evidence of the bank acting as financial advisor in some past capacity. This duty extended to all bank officers but was limited to the scope of the bank's and individual officer's association with any particular transaction.

More recently, however, we encountered a situation where a bank had no fiduciary duty. In Pulse v. North American Land Title Co. (Mont. 1985), 707 P.2d 1105, 42 St.Rep. 1578, the appellants, the Pulses, were involved in a land purchase which their bank financed through a mortgage. When problems arose, the Pulses sued for breach of fiduciary duty. We held that because the special circumstances that existed in Deist were not present, the bank had no fidicuary duty to the Pulses. Unlike Deist, the bank had not located buyers for the Pulses; the bank was not a party to the transaction beyond its role as the buyer's lender; the sale was not a product of the bank's advice; and the Pulses had not dealt with the bank extensively or exclusively.

Pulse controls in this case. The facts here show that the connection between First Bank and the Simmons is even more tenuous than that between the Pulses and their bank. There is no evidence that the First Bank ever advised the Simmons. There is no evidence that the Simmons ever asked for advice from anyone at the Bank. There is no evidence of a long history of dealings with or reliance upon the Bank by

the Simmons. There is evidence from bank manager Robert Thiesen's deposition that he did suggest terms of sale to real estate agent Fenton but that is relevant more to the bank's relationship to the sellers, the Dunnings, than to its relationship to the Simmons. In cases where the bank has been held to a fiduciary duty because of its advisory role the duty benefited the party being advised and not some third party. See Deist, 678 P.2d 188. The facts, as presented by appellants, do not support the existence of a fiduciary duty.

Appellants also contend that the breach of the separate duty of good faith and fair dealing constitutes constructive fraud. Specifically, they argue that the question of whether this duty exists is one of fact and not susceptible to summary judgment determination.

We have recognized that the duty required by subsection (1) need not rise to that of a fiduciary to satisfy the requirements of § 28-2-406, MCA. McJunkin v. Kaufman (Mont. 1987), ___ P.2d ___, ___, 44 St.Rep. 2111, 2116. This Court discussed a bank's duty of good faith and fair dealing in Noonan v. First Bank Butte (Mont. 1987), 740 P.2d 631, 44 St.Rep. 1124. Where we stated:

> In the past, the Court has extended the implied duty of good faith and fair dealing to cases involving banks dealing with their customers. In Tribby v. Northwestern Bank of Great Falls (Mont. 1985), 704 P.2d 409, 419, 42 St.Rep. 1133, 1142, we extended the implied covenant of good faith and fair dealing to the commercial area of bank-customer relations. In Nicholson v. United Pacific Ins. Co. (Mont. 1985), 710 P.2d 1342, 1347, 42 St.Rep. 1822, 1828, we noted the extension of the tort theory to banks dealing with customers and cited Tribby and First National Bank of Libby v. Twombly (Mont. 1984), 689 P.2d 1226, 41 St.Rep. 1948. In Northwestern Nat. Bank v. Weaver-Maxwell (Mont. 1986), 729 P.2d 1258, 43 St.Rep. 1995, we allowed a case of a bank-customer dispute to be remanded for retrial on a bad faith theory.

Noonan, 740 P.2d at 634. The duty of good faith and fair dealing between a bank and its customer is alive and well in Montana law but as we indicated in Tribby not every contract or statutorily imposed obligation carries such a duty. 704 P.2d at 419. The appellants cannot refer to a contract between the Simmons and First Bank existing at the time of the misrepresentations. Nor do they cite any statutory duty. The record shows no customer-bank relationship between the Simmons and First Bank at the time of the alleged misrepresentations by the Dunnings. In fact the record shows no relationship at all. Neither are there facts that could establish an agency relationship between the Bank and the Dunnings or Ward Fenton. The duty of good faith and fair dealing presupposes the existence of a relationship of some type. 37 Am.Jur.2d Fraud and Deceit § 15, at 39. The fact that the bank knew of the Dunnings' negotiations with the Simmons and held loans secured by the ranch property does not establish a relationship with the Simmons.

As appellant notes First Bank and the Simmons did have a memorandum of agreement dated the same day as the contract for deed. Appellant argues that this memorandum is sufficient to establish a duty of good faith. We do not agree. The purpose of the memorandum for agreement was to protect the Simmons in case the Dunnings failed to make the mortgage payment to Connecticut Mutual Life Ins. In the event of default, First Bank agreed to loan Simmons the amount of the difference between their annual payment to the Dunnings and the mortgage payment due.

Appellants have forcefully argued that this memorandum is evidence that First Bank was an active procurer of the sale and in fact attempted to engineer it to its benefit by taking advantage of the Dunnings' misrepresentation. These inferences, however, are too tenuous to connect the Bank as a

party to the fraud allegedly perpetrated by the Dunnings. The appellant cannot rely on suspicions. Cheyenne Western Bank, 587 P.2d at 404. There was no duty of good faith and fair dealing between the Simmons and First Bank with regard to the contract for deed.

Appellants argue that this question is one for the jury. We stated in Morse v. Espeland (Mont. 1985), 696 P.2d 428, 42 St.Rep. 251, that the breach of a duty of good faith is a question of fact not susceptible to summary judgment. The existence of such a duty, however, is a question of law properly determined during summary judgment proceedings. Summary judgment in favor of the bank is affirmed.

Issue II

Appellants' next issue challenges the correctness of the District Court's summary judgment in favor of respondent, Connecticut Mutual Life Insurance Company (CML). In essence, the Simmons argue that Douglas Hall d/b/a Hall & Hall, was CML's agent and that therefore the question of the existence of an agency relationship is a material issue of fact in connection with the extent and nature of CML's prior knowledge regarding the Simmons/Dunning transaction. In addition, appellants complain that CML did not adequately reply to plaintiffs' request for production of documents.

The respondent replies that the existence of an agency relationship between itself and Hall is irrelevant to any of the appellants' theories of recovery because no duties were owed to appellants by CML. Additionally, any objections regarding CML's responses to plaintiffs' requests for production of documents have been waived. We agree with the respondent.

The appellants have alleged that CML had, first, a duty to use reasonable and ordinary care in approving the mortgage release; second, a duty to investigate the carrying capacity

and economic viability of the land unit purchased by the Simmons; and third, a duty to exercise good faith and deal fairly with the appellants that, because of its superior knowledge, required CML to disclose any information that would indicate the nonviability of the land in question. The law regarding these duties has been thoroughly set out in Issue I and need not be repeated here.

Assuming that Hall was acting as agent for CML, there is no evidence that would establish a fiduciary or other relationship between the Simmons and respondent CML to support appellants' claims. Since 1979, CML has held a mortgage on the Dunnings' three units of farm property. At that time, Hall & Hall made an appraisal of two of the units including an estimation of carrying capacity of 331 animal units. There is some evidence that Hall spoke on and off with Bob Thiesen, then the manager of the First Bank, and Simmons' attorney after the contract for deed had been signed. There is no evidence that Hall & Hall or CML had contact with the Simmons before or during their negotiations with the Dunnings. There is no contract between the Simmons and Hall & Hall or CML. CML was asked to approve the sale only after the contract for deed had been signed. This approval was required by CML's contract with the Dunnings and was not requested by the Simmons. There is nothing that would connect Hall & Hall or CML with the Dunnings' misrepresentations.

Appellant also finds fault with the fact that summary judgment was entered before CML had provided suitable responses to Simmons' request for production of documents. The request was for CML's "home office file" which would ostensibly have shown the extent of CML's knowledge of the economic feasibility of the Dunning ranch. The failure of CML to adequately respond was brought before the District

Court in plaintiffs' response to motion for summary judgment and was also addressed by defendant's reply to plaintiffs' response. CML argues that any objection is waived because plaintiffs never raised this issue since it failed to file a response to the motion for summary judgment and failed to appear at the hearing on the motion.

Apparently appellants' response was misfiled because it had an incorrect caption and docket number. The District Court had ordered a response to be filed by October 24, 1986. Plaintiff did not attempt to file the response until October 28, 1986, several days after the date ordered by the District Court. In addition, a hearing had been set and was held October 27, 1986, with the plaintiffs not appearing. The matter was deemed submitted before the court without the presence of the plaintiffs and without the court having possession of the misfiled brief. CML received a copy of the misfiled brief on October 29, 1986. The District Court apparently never received the misfiled brief. Summary judgment for CML was granted by order dated November 21, 1986.

Since we hold that CML was in no relationship to the Simmons that created a duty to disclose information the question of what CML knew or did not know about the economic viability of the Dunnings' parcel is irrelevant. CML's production of its office file would not raise an issue of material fact. Therefore, the summary judgment for CML is affirmed.

Issue III

Finally, appellant argues that it was error for the District Court to grant summary judgment without entering findings of fact and conclusions of law. Such findings are necessary for the reviewing court to determine the basis for the District Court's decision. The District Court's action,

appellant contends, is contrary to the court's admonishment in Big Man v. State (Mont. 1981), 626 P.2d 235, 38 St.Rep. 362, and is therefore in error. We disagree.

Under Rule 52(a), M.R.Civ.P., findings of fact and conclusions of law are not required to be entered upon motions for summary judgment pursuant to Rule 56, M.R.Civ.P. The rule states in pertinent part that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." This Court has followed this rule on several occasions. See Lewis v. State, Dept. of Revenue (Mont. 1984), 675 P.2d 107, 114, 41 St.Rep. 9, 17; Downs v. Smyk (1979), 185 Mont. 16, 19, 604 P.2d 307, 309; Boise Cascade v. First Sec. Bank of Anaconda (1979), 183 Mont. 378, 385, 600 P.2d 173, 178.

Appellant refers us to both the majority and special concurring opinions of Big Man as controlling in this case. Specifically, appellant refers to the special concurring opinion by Justice Shea and joined by Justice Sheehy. Although a concurrence is often insightful and scholarly it is not the holding of the Court and is not accorded the same precedential value. It does not control. Neither the majority nor special concurring opinion in Big Man has relevance to this issue. The District Court did not err in its summary judgment.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

- 11 -

_____

_____
Justices