**Grace MANCUSO, Petitioner,**

v.

**UNITED BANK OF PUEBLO, a state banking corporation, Respondent.**

No. 90SC142.

Supreme Court of Colorado, En Banc.

Oct. 7, 1991.

Rehearing Denied Nov. 4, 1991.

---

James M. Croshal, Ripperger & Croshal, Pueblo, for petitioner.

James T. Flynn, Brent E. Rychener, Holme Roberts & Owen, Colorado Springs, for respondent.

Phillip S. Figa, Geoffrey P. Anderson, Burns, Figa & Will, P.C., Englewood, for amicus curiae Colorado Trial Lawyers Ass'n.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to consider whether the Colorado Court of Appeals erred when it affirmed the trial court's order of summary judgment in *Mancuso v. United Bank of Pueblo*, 796 P.2d 7 (Colo.App. 1990). The trial court held that, as a matter of law, petitioner's funds at United Bank were not special deposits, and petitioner's accounts at United Bank were not subject to either a constructive trust or a resulting trust. We affirm the court of appeals' conclusion with respect to the first issue, reverse the court of appeals' judgment with respect to the second issue, and remand to the court of appeals with instructions to return the matter to the trial court for further proceedings consistent with this opinion.[1]

### I.

In 1977, following the death of her husband, the petitioner, Grace Mancuso ("Ms. Mancuso"), moved from Buffalo, New York to Pueblo, Colorado to live near her son

1. We also granted certiorari on the issue of whether the trial court erred in holding that, as a matter of law, the respondent had no duty to exercise reasonable care in rendering advice to the petitioner. However, we now dismiss the writ as improvidently granted on this issue because the claim was not properly raised in the trial court.

Neal Mancuso. Shortly after she arrived, she transferred her savings to two accounts, a checking account in her name only and a joint savings account in her name and her son's name, at what was then Republic Bank. In October of that year, she transferred her savings to United Bank ("the Bank") because her son recommended the Bank.

At the Bank, which represented itself as a "full service bank," she was assisted by a Bank employee with the title of "personal banker." The duties of a "personal banker" at the time included working with new customers to help them select the type of account to fit their needs and to explain their different options. Ms. Mancuso alleges that she asked the Bank's advice concerning what type of account she should open and she instructed the Bank that she wanted an account that would allow her son only to withdraw money on her behalf when she was traveling or if she was involved in an emergency. The Bank employee allegedly recommended that she open a joint account with her son without explaining the nature of a joint account or that the Bank would have a statutory right to set off the funds in the joint account against any other debts of either of the signatories. Ms. Mancuso could not recall the name of the Bank employee nor the specifics of the conversation.

Ms. Mancuso, believing that the joint accounts were suitable to her needs, opened a joint account by signing the signature card.[2] At the same time, Ms. Mancuso purchased three certificates of deposit payable to herself or her son. There were no terms on the certificates that specified the terms of the agreement between the Bank, Ms. Mancuso and her son. Ms. Mancuso alleges that she believed that this arrangement too was the proper way to provide her son with limited access to the funds in case she needed money while traveling or in case she had an emergency.

In 1980, Neal borrowed $65,000 from the Bank on behalf of Trinity Consultants, Inc., a corporation in which he was the majority stockholder. One year later, he borrowed another $20,000 from the Bank on behalf of the corporation. In filling out his individual finance statements to obtain the loans, he alleged that the Bank told him that he should list his mother's funds as assets because he was a signatory to the account.

In 1985, Neal defaulted on his loans and the Bank exercised its statutory right of set off against the funds held in the joint savings account and the jointly held certificates of deposit. *See* § 11–6–105, 4B C.R.S. (1990 Supp.).[3] By 1985, there was approximately $6,200 in the savings account and two unmatured certificates of deposit, one for $10,000 and the other for

**2.** The signature card indicated that by signing the front of the card the signatories agreed to the savings account agreement on the back side of the card. This agreement stated in part:

Joint account—Payable to either or survivor. We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship and not as tenants in common, and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.... It is also agreed that the bank may, but need not, recognize any stop-payment order from any one of us with respect to an item drawn on this account by another.

Ms. Mancuso, however, signed the card without reading the back.

**3.** This section provides:

Joint deposits—right of survivor. Except as to accounts, which are defined in and which

shall be paid as provided in article 15 of title 15, C.R.S., when a bank deposit in any bank transacting business in this state is made in the names of two or more persons payable to them or to any of them, such deposit, or any part thereof or interest thereon, may be paid to any one of said persons whether the others are living or not, and the receipt or acquittance of the person so paid shall be valid and sufficient discharge to the paying bank from all said persons and their heirs, executors, administrators, and assigns; such deposit shall be deemed, so far as the rights and liabilities of the bank are concerned, to be owned by said persons in joint tenancy with the right of survivorship, but the bank has the right of setoff against such deposit, to the extent thereof, to collect a debt owed to the bank by any joint depositor, which right shall not be affected by death. Such deposit shall be subject to section 39–23–139, C.R.S.

§ 11–6–105, 4B C.R.S. (1990 Supp.).

$13,423.98.[4] Until the time the Bank seized the funds, it appears that Neal Mancuso had not withdrawn any of the funds from the accounts.

When Ms. Mancuso learned that the Bank had seized the funds, she filed suit against the Bank alleging that the Bank was not entitled to set off the funds from her accounts because her funds were special deposits and because her funds were subject to a constructive or resulting trust. Prior to trial, the Bank filed a motion for summary judgment and the trial court granted the Bank's motion.

## II.

In order to address Ms. Mancuso's claims, it is useful to summarize the principles governing summary judgment review.

In *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339–40 (Colo.1988), we stated: "Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Closed Basin Landowners' Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 632 (Colo.1987); *Americans United for Separation of Church & State Fund, Inc. v. State*, 648 P.2d 1072, 1087 (Colo.1982). The moving party has the initial burden to show that there is no genuine issue of material fact. *See, e.g., Continental Airlines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987); *Ginter v. Palmer & Co.*, 196 Colo. 203, 206, 585 P.2d 583, 585 (1978). However, once the moving party has met its initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *Id.* In determining whether summary judgment is proper, the nonmoving party "must receive the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts," *Tapley v. Golden Big O Tires*, 676 P.2d 676, 678 (Colo.1983), and we must resolve all doubts as to whether an issue of

fact exists against the moving party. *See, e.g., Dominguez v. Babcock*, 727 P.2d 362, 365 (Colo.1986); *Tapley*, 676 P.2d at 678; *Jones v. Dressel*, 623 P.2d 370, 373 (Colo. 1981). Furthermore, even where "it is extremely doubtful that a genuine issue of fact exists," summary judgment is not appropriate. *Abrahamsen v. Mountain States Tel. & Tel. Co.*, 177 Colo. 422, 428, 494 P.2d 1287, 1290 (1972).

With these principles in mind, we address Ms. Mancuso's claims.

## III.

We first address whether Ms. Mancuso's funds were special deposits and, as a consequence, were unavailable for set off by the Bank against her son's debts. We find as a matter of law that Ms. Mancuso's funds were not special deposits.

It is established law that a deposit is either general or special and it cannot be both. *See* 5B *Michie on Banks and Banking*, § 328 (1991). When a depositor makes a general deposit, the depositor transfers ownership of the money to the bank which holds the money as a debtor. *Cox v. Metropolitan State Bank, Inc.*, 138 Colo. 576, 584, 336 P.2d 742, 747 (1959). In contrast, when a depositor makes a special deposit, title to the money vests directly in the depositor with the bank holding the money as a bailee. *In re B & L Oil Co.*, 46 B.R. 731, 738 (Bankr.D.Colo.1985).

It is also established that if an account is determined to be a special deposit, the bank holding the deposit may not set off the account against other debts of the depositor. In *Sherberg v. First National Bank of Englewood*, 122 Colo. 407, 411, 222 P.2d 782, 784 (1950), we stated, "[w]hen a bank knowingly accepts a deposit of money, as here, for a specific purpose, it thereby impliedly binds itself not to set off against such deposit a debt due it from the depositor." *See generally* 5B *Michie on Banks and Banking*, §§ 328–349 (1991). *See also Glenn Justice Mortgage*

---

**4.** In 1981 and 1982, Ms. Mancuso opened another joint savings account and purchased two more certificates of deposit. Ms. Mancuso alleges that these transactions were essentially continuations of the original account and certificates of deposit.

*Co. v. First Nat'l Bank of Fort Collins,* 592 F.2d 567, 570 (10th Cir.1979); *Cox,* 138 Colo. at 587, 336 P.2d at 749. Although a determination of whether an account is a special deposit will depend upon "the mutual intent and understanding of the parties," *Sherberg,* 122 Colo. at 411, 222 P.2d at 784, the special deposit must be made for a specific purpose. An account is a special deposit if its funds were designated for a particular purpose or to be paid to a particular person. *See First City Nat'l Bank of Oxford v. Long–Lewis Hardware Co.,* 363 So.2d 770, 772 (Ala.Civ.App.1978).

■ Case law indicates that the purpose of limiting the access of one signatory to an account would not be a special purpose under this doctrine. *See, e.g., Glenn Justice Mortgage Co.,* 592 F.2d at 571 (funds deposited into debtor's account were not a special deposit because there was no special understanding between debtor and bank concerning the purpose for which the deposited funds were to be used); *Rainsville Bank v. Willingham,* 485 So.2d 319, 323 (Ala.1986) (funds deposited in debtor's account determined to be special deposit because debtor specifically told banker that funds were to be used to pay certain bankruptcy debts with which the bank was familiar); *Cox,* 138 Colo. at 583, 336 P.2d at 747 (funds paid to agent to be transmitted to principal deposited into agent's account treated as special deposit because of trust relationship existing between agent and principal); *Sherberg,* 122 Colo. at 409, 222 P.2d at 784 (bank accepted deposit knowing that it was intended to be used to pay debtor/contractor to build house and thus could not set off deposit); *Henderson v. Greeley Nat'l Bank of Greeley,* 111 Colo. 365, 367, 142 P.2d 480, 481 (1943) (deposits made for the purpose of purchasing livestock were considered accounts created for a special purpose); *Hugh v. Washington Indus. Bank,* 757 P.2d 1154, 1156 (Colo. App.1988) (deposits made by debtor for the specific purpose of paying investor were special deposits).

In this case, Ms. Mancuso's funds were not segregated for a specific purpose or use. She made the deposits in anticipation of using the money as she needed it in the future. Thus, even if the Bank accepted Ms. Mancuso's deposits knowing that she intended to limit her son's access to the account, such a purpose would not render the funds in her accounts special deposits. For this reason, Ms. Mancuso's claim fails as a matter of law.

## IV.

### A.

Next, we address Ms. Mancuso's claim that a constructive trust should be imposed upon the Bank. According to Ms. Mancuso's argument, there are two theories under which a constructive trust could be imposed in the situation before us. Her first theory, which focuses upon the relationship between Ms. Mancuso and the Bank, is that a constructive trust should be imposed upon the Bank because the Bank obtained her money through an abuse of confidential relationship. The second theory, which focuses upon the relationship between Ms. Mancuso and her son, is that a constructive trust should be imposed upon the Bank because it knew that her son held the title to the accounts and certificates of deposit subject to resulting trusts. Because we find that there exist genuine issues of fact under both theories, we hold that summary judgment was improperly granted with respect to this claim.

■ A constructive trust is a remedial device designed to prevent unjust enrichment. G. Palmer, 1 *Law of Restitution,* § 1.3 at 12 (1978). *See also In re Marriage of Allen,* 724 P.2d 651, 657 (Colo. 1986); *Page v. Clark,* 197 Colo. 306, 315, 592 P.2d 792, 797 (1979). In general, "a constructive trust is imposed ... because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." *Restatement (Second) of Trusts,* ch. 12, introductory note at 326 (1959) [*Rest. (2d) of Trusts* ]. The doctrine of constructive trusts is extremely flexible. *Page,* 197 Colo. at 317, 592 P.2d at 799.

■ Some instances in which a constructive trust may be imposed are when

property is obtained by fraud, duress, or abuse of confidential or fiduciary relationship. *Page,* 197 Colo. at 315–16, 592 P.2d at 798. In this case, Ms. Mancuso argues that the Bank obtained the funds held in her account as a result of the confidential relationship that existed between herself and the Bank. In *United Fire & Casualty Co. v. Nissan Motor Corp.,* 164 Colo. 42, 44–45, 433 P.2d 769, 771 (1967), we described a confidential relationship as one "between two persons when it is established that one occupies a superior position over the other—intellectually, physically, governmentally or morally—with the opportunity to use that superiority to the other's disadvantage." (quoting *Union Trust Co. of Newcastle v. Cwynar,* 388 Pa. 644, 653, 131 A.2d 133, 137 (1957)). In *Page* we further stated that "[t]he confidential relationship may arise from a multitude of circumstances, but the transferor of the property must be justified in his belief that the transferee will act in the interests of the transferor." *Page,* 197 Colo. at 316, 592 P.2d at 798.

The burden of proving the existence of the confidential relationship is upon the party claiming the existence of such a relationship. *Page,* 197 Colo. at 316, 592 P.2d at 798. Accordingly, in order for Ms. Mancuso to prevail upon her claim to impose a constructive trust based upon her relationship with the Bank, the evidence must give rise to a reasonable inference both that the Bank occupied a superior position over her that it used to her disadvantage and that she was justified in believing that the Bank would act in her interest.

As we stated earlier, the relationship between a bank and a customer with respect to a general deposit is that of a debtor to a creditor. *See Cox,* 138 Colo. at 584, 336 P.2d at 747. However, it is generally accepted that "a relationship other than that of debtor and creditor may be created by the nature of the deposit or the contract or the circumstances under which it is made." 5A *Michie on Banks and Banking* § 1 (1983 Repl.Vol.). When a bank moves into the role of an advisor, the resulting relationship extends beyond the relationship of debtor and creditor and may give rise to higher duties. *See Simmons v. Jenkins,* 230 Mont. 429, 432–34, 750 P.2d 1067, 1070 (1988); *Tokarz v. Frontier Fed. Savings & Loan Ass'n,* 33 Wash.App. 456, 458–60, 656 P.2d 1089, 1092 (1983).

Ms. Mancuso has alleged that she asked the Bank for advice regarding the type of account in which she should place her money so that her son would have limited access. The deposition statements of two Bank employees indicate that duties of the "personal bankers" included giving advice to customers regarding the account that would best fit their needs. Ms. Mancuso also alleged that she placed her funds in the jointly held account and certificates of deposit at the recommendation of a Bank employee. Two Bank employees also stated hypothetically that they would have recommended joint accounts to a customer who wanted to give another limited access to his or her account. Since the case comes before us from a summary judgment, we must resolve all doubts as to whether an issue of fact exists against the moving party. Although the trier of fact may find this evidence ultimately unpersuasive as to whether a confidential relationship existed, we find that a reasonable inference may be drawn to that effect, and thus summary judgment was improperly granted.

## B.

Ms. Mancuso's second theory is that a constructive trust could be imposed upon the Bank if her son held title to her account subject to a resulting trust. In such case, she argues that the Bank could not set off the assets held by the son in trust for his mother against the son's personal debts if it had notice of the trust relationship and a constructive trust would be imposed upon the trust funds seized by the Bank. In order to address her argument, we must first consider the law relating to resulting trusts.

A resulting trust is fundamentally different from a constructive trust. A resulting trust is a trust implied by law when

the circumstances surrounding the transfer of property raise the inference that the parties intended to create a trust. According to § 404 of the *Restatement (Second) of Trusts* (1959),

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

This type of trust has been applied in situations involving apparent joint ownership of land, *see Chamberlin v. Chamberlin*, 116 N.H. 368, 359 A.2d 631 (1976); *John Deere Indus. Equip. Co. v. Gentile*, 9 Ohio App.3d 251, 459 N.E.2d 611 (1983), and to disputed ownership of bank accounts. *See Herd v. Chambers*, 158 Kan. 614, 149 P.2d 583 (1944); *Bilovocki v. Marimberga*, 62 Ohio App.2d 169, 405 N.E.2d 337 (1979).

As a general rule, a resulting trust arises when the purchase price is paid by one person and the property is transferred to another. *See Rest. (2d) of Trusts* § 440. However, there is an exception to the general rule when the transferee is the child of the person by whom the purchase price is paid. *See Rest. (2d) of Trusts* § 442. In such case, it is presumed that the transfer was a gift and the one claiming a resulting trust has the burden to prove that the person who paid the purchase price did not intend to make a gift. *Id. See also Gomez v. Cecena*, 15 Cal.2d 363, 101 P.2d 477, 478 (1940); *Nolan v. American Tel. & Tel. Co.*, 326 Ill.App. 328, 344–46, 61 N.E.2d 876, 883 (1945); *Mims v. Mims*, 305 N.C. 41, 286 S.E.2d 779, 789–90 (1982).

■ In determining whether the transferor intended to make a gift, it is clear that the intent of the transferor is determinative. As the North Carolina Supreme Court stated,

> In the final analysis, whether or not a resulting trust arises in favor of the per-

son paying the consideration for a transfer of property to another, depends on the intention, at the time of the transfer, of the person furnishing the consideration, and such intention is to be determined from all the attendant facts and circumstances.

*Mims*, 286 S.E.2d at 790 (quotations omitted). Thus, Ms. Mancuso must show, in order to rebut the presumption that she made a gift to her son, that the evidence creates a reasonable inference to the contrary.

■ To prove that a gift was not intended, Ms. Mancuso may rely upon "all the attendant facts and circumstances," including statements [5] made by the parties contemporaneously with the transaction. *Id.* Some jurisdictions have found that evidence of the transferor's acts and conduct, which occur subsequent to the transfer of title, is admissible to prove intent at the time of transfer. *See, e.g., University State Bank v. Blevins*, 227 Kan. 40, 42–44, 605 P.2d 91, 94 (1980); *Hampton v. Niehaus*, 329 S.W.2d 794, 800 (Mo.1959); *Chamberlin*, 116 N.H. at 371–72, 359 A.2d at 634. *But see Mims*, 286 S.E.2d at 790–91.

■ Looking to the evidence in this case in the light most favorable to Ms. Mancuso, we find that the evidence could overcome the presumption that Ms. Mancuso intended to make a gift to her son. The Bank does not dispute that the funds for the accounts were furnished by Ms. Mancuso. The evidence shows that Ms. Mancuso set up the accounts with the money from her accounts in New York shortly after she moved to Pueblo. She states in her affidavit that she "wanted to open an account, but [she] wanted [her] son Neal to have the ability to send [her] money from the accounts in case of an emergence [sic] but [she] did not want him to take the money out whenever he felt like it." Ms. Mancuso's deposition also reveals that she considered the money in the account as her property and that Neal was only allowed to

---

5. Parol evidence is admissible to show the existence of a resulting trust. *See Rest. (2d) of Trusts* § 443 comment a (1959). *See also Jones*

*v. McKinney*, 107 Colo. 215, 217, 110 P.2d 258, 259 (1941); *McPherrin v. Fair*, 57 Colo. 333, 337, 141 P. 472, 474 (1914).

withdraw money on her behalf. Neal Mancuso's deposition testimony indicates that he understood that the money in the account belonged to his mother and that he was not to enjoy beneficial interest in the money. It also appears from the record that Neal never made any withdrawals from the account. Thus the evidence could establish that Neal Mancuso held title to the joint account upon a resulting trust.

■ The Bank concedes that the facts in this case reasonably give rise to the inference that Neal Mancuso held title to the funds under a resulting trust in favor of his mother. The Bank argues, however, that even if a jury could infer that a resulting trust existed between the mother and son, Ms. Mancuso's only recourse is a suit against her son to recover the monies obtained by the Bank pursuant to its right to set-off under section 15–15–113, 6B C.R.S. (1987).[6] This argument, however, is incorrect.

In *Cox v. Metropolitan State Bank, Inc.*, 138 Colo. 576, 336 P.2d 742 (1959), we addressed a similar situation in which the beneficiary of a trust had a cause of action against a bank that had set-off the beneficiary's trust funds against the trustee's personal debt. The plurality opinion stated:

> [W]e are not aware of any principle which will enable a depository who has received from a trustee or agent a fund belonging in fact to the principal or beneficiary, to appropriate it by his sole act to his own debt held against the trustee or

agent and thereupon to insist that his want of knowledge of the true ownership is sufficient to guard such inequitable appropriation and bar the real owner from pursuing the fund.

*Id.* at 586, 336 P.2d at 748 (quoting *Burtnett v. First Nat'l Bank of Corunna*, 38 Mich. 630, 635 (1878)). However, the plurality implied that this principle would not apply if the bank extends credit to the trustee in reliance of payment out of the funds. *Id.* *See also* Sutton, J., specially concurring on the grounds that the bank had knowledge that the funds in question were held in trust. 336 P.2d at 749.

Assuming the Bank proves that it extended credit to Neal Mancuso in reliance upon payment from the joint accounts, the Bank could still be liable to Ms. Mancuso. If the factfinder concludes that a resulting trust existed, then Neal Mancuso, as trustee of a resulting trust, was in a fiduciary relationship with his mother. *See Rest. (2d) of Trusts*, ch. 12, intro. note at 326. However, notwithstanding the trust relationship, Neal Mancuso listed the trust funds as his own assets when he applied for a personal loan allegedly because the Bank instructed him to do so. If a trust is found to exist, applying for a loan and pledging the trust funds would constitute a breach of trust. *Cf. Buder v. Sartore*, 774 P.2d 1383, 1390 (Colo.1989).[7] The Bank's liability for participation in Neal's breach will depend upon whether it had notice of the breach of trust.[8] *See Rest. (2d) of Trusts* § 324 comment h (1959).

---

**6.** The Bank relies upon *Spratt v. Security Bank of Buffalo, Wyo.*, 654 P.2d 130 (Wyo.1982). This case is distinguishable in that it involved a bank's right to set off a trust account against the beneficiary's debts.

**7.** A trustee may be in breach of trust whether he performed in bad faith, negligence, or under mistake of fact or law. *See Rest. (2d) of Trusts* § 201 comment a (1959).

**8.** We note that a specific rule applies to transfers of negotiable instruments. Under section 15–1–106, 6B C.R.S. (1987), a creditor or transferee may be held liable for a fiduciary's breach if the creditor or transferee actually knows that the fiduciary transferred negotiable instruments belonging to his principal in breach of his fidu-

ciary obligation. The statute provides in relevant part:

> If ... such instrument is transferred by the fiduciary in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor or is transferred in any transaction known by the transferee to be for the personal benefit of the fiduciary, the creditor or other transferee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in transferring the instrument.

§ 15–1–106. Although we have not applied this statute, other jurisdictions that have similar provisions have applied the provision in factual situations similar to the one before us. *See Anacostia Bank v. United States Fidelity & Guar. Co.*, 119 F.2d 455 (D.C.Cir.1941) (bank partici-

According to the principles stated in § 288 of the *Rest. (2d) of Trusts* (1959), a transferee with notice of a breach of trust does not hold the property free of trust.[9] Section 297(a) explains what constitutes notice. That section provides that "a person has notice of a breach of trust if ... he knows or should know of the breach of trust." *Rest. (2d) of Trusts* § 297(a). This principle was elaborated upon in *Centrust Savings Bank v. Barnett Banks Trust Co.*, 483 So.2d 867, 869 (Fla.App.1986), in which the Florida District Court of Appeals stated that the problem in cases involving participation in breach of trust is,

> whether the third person knew or should have known that he was taking part in a breach, that is, whether he had actual knowledge that a breach was being committed, or had notice of facts which should charge him with such knowledge because the facts imposed a duty to inquire into the legality of the transaction and a reasonable inquiry would have disclosed the impending breach of duty.

In this case, the statements of Ms. Mancuso and her son, if believed by the jury, indicate that the Bank knew of the trust nature of the accounts and thus the Bank would not hold the trust funds free of trust. Consequently, we find that there exist material issues of fact regarding both whether a resulting trust arose between Ms. Mancuso and her son and whether the Bank had actual knowledge of Neal Mancuso's subsequent breach.

### V.

In conclusion, we find that summary judgment was properly granted with respect to whether Ms. Mancuso's funds were special deposits, but it was improperly granted with respect to whether Ms. Mancuso's funds were subject to a constructive or resulting trust. Therefore, we affirm in part, reverse in part, and remand to the court of appeals with instructions to return the matter to the trial court for further proceedings.

ERICKSON, J., specially concurs in part and dissents in part.

ROVIRA, C.J., and VOLLACK, J., join in the special concurrence and dissent.

Justice ERICKSON, specially concurring in part and dissenting in part:

The district court granted summary judgment and the court of appeals affirmed. *Mancuso v. United Bank*, 796 P.2d 7 (Colo.App.1990). We granted certiorari to determine three issues. First, whether the funds in Grace Mancuso's joint savings account and certificates of deposit were special deposits and, thus, were insulated from United Bank's right of setoff under section 11–6–105, 4B C.R.S. (1990 Supp.). Second, whether the bank had a duty to exercise reasonable care in rendering advice to Mancuso and, if so, whether it violated that duty. Third, whether a triable issue of fact exists that forecloses the entry of summary judgment on Mancuso's claim for a constructive or a resulting trust.

I concur with the majority on the first issue. The accounts at issue here do not qualify as special deposits since they were not made for a specific purpose. The majority does not address the negligence issue, but reverses the entry of summary judgment on the constructive trust and resulting trust issues. I write separately to address the bank's duty in opening an account for Mancuso under the facts of this

pated in guardian's breach by extending personal loan to guardian secured by guardianship funds and by later accepting guardianship funds in payment for defaulted loan); *Western Casualty and Sur. Co. v. First State Bank of Bonne Terre*, 390 S.W.2d 913 (Mo.App.1965) (bank liable when it knew that guardian borrowed funds and pledged ward's asset as security). This provision is part of the Uniform Fiduciaries Law, which was adopted by the Colorado legislature in 1923. *See* § 15–1–101, 6B C.R.S. (1987).

9. § 288 provides:
> If the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the property free of trust, although he paid value for the transfer.

*Rest. (2d) of Trusts* (1959).

case and to consider whether the record supports the granting of summary judgment on the constructive and resulting trust claims. I also emphasize that the factual dispute relates only to accounts opened in 1977. Because the damages suffered by Mancuso occurred as a result of the setoff of accounts opened by Mancuso in 1981 and 1982, and because there is no factual dispute regarding these accounts, summary judgment is proper.

Mancuso, in her amended complaint, contended that United Bank was negligent in advising her to put her money in a joint account, in exercising a setoff against her joint accounts to satisfy Neal's debt, and in failing to advise her that: (1) there were other account options that would meet her needs; (2) if her son, Neal, borrowed from the bank at any time in the future and then defaulted, her funds could be seized; and (3) she should seek the advice of an attorney to inform her of the consequences of opening a joint account. Mancuso further claimed that her funds had been converted and that the bank could not set off her funds because they had been accepted for special purposes or, in the alternative, because the bank knew the accounts were held by Neal in trust for his mother. Mancuso requested the return of the money with interest, damages for mental anguish, and $200,000 in punitive damages. The trial court granted summary judgment for United Bank on all claims. The court of appeals affirmed, holding that United Bank was not negligent for failing to disclose the bank's right of setoff and that the facts were insufficient to establish either special accounts or a confidential relationship, which was necessary to create a constructive trust. The court of appeals did not address the resulting trust issue.

## I

To resolve these issues it is necessary to summarize the relevant facts. Before Mancuso moved to Colorado, she had two New York bank accounts: one in her name alone and another that she held jointly with her husband. When she moved to Colorado, she opened a personal account in her name and a joint account with her son at Republic Bank. Upon her son's recommendation, Mancuso went with Neal to open accounts at United Bank. The following accounts, all payable to the order of Grace Mancuso or Neal A. Mancuso, were opened on October 12, 1977: a certificate of deposit for $2,000 payable on October 12, 1978; a certificate of deposit for $4,000 payable on April 12, 1980; and a certificate of deposit for $4,000 payable on October 12, 1981. A joint savings account was also opened in the names of Grace Mancuso and Neal A. Mancuso with an initial deposit of $12,-218.89. Both Mancuso and Neal signed a signature card for the joint savings account, which provided on the back:

> We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common, and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.

Above the signature line the card stated, "[T]he undersigned ... acknowledges and agrees to the provision of the savings account agreement on the reverse side hereof." Mancuso claims she did not read the back of the card.

At her deposition in 1986, Mancuso testified that she could not remember which United Bank representative she spoke with at the time the 1977 accounts were opened or the contents of their conversation. In an affidavit prepared in 1988, however, Mancuso made the following statements concerning that event:

> I requested from a bank employee advice about what type of account should be opened. I advised the employee that I wanted my son Neal to have the ability to send me money from the accounts in case of an emergence [sic], but I did not want him to be able to take the money out whenever he felt like it. The employee advised me to put my money in a joint account and gave us the cards to open the account for my son and I to sign.

Relying upon the employee's advice, we signed those cards and opened up the account.

Neither Mancuso nor Neal had any outstanding loans at the bank when these accounts were opened.

Several years later, Mancuso and Neal opened other joint accounts at United Bank. In March 1981, a joint certificate of deposit for $10,000 was opened in the name of Grace or Neal Mancuso with a cashier's check from Republic Bank. A new joint savings account was also opened. Both Mancuso and Neal signed another signature card identical to the one signed in 1977. In October 1982, Mancuso and Neal opened a joint certificate of deposit in the amount of $13,423.98. According to the record, United Bank's employees made no representations to Mancuso when she opened these later accounts.

In 1982, Neal personally guaranteed a loan in the amount of $65,000 to a corporation he controlled. In 1983, he guaranteed an additional loan of $20,000 to the same corporation. Both loans went into default in April 1985. Since Neal had guaranteed the loans, United Bank exercised its statutory right of setoff against the 1981 and 1982 accounts. Neal made no withdrawals from the accounts opened in 1977, and the setoff was not made against those accounts.[1]

## II

Mancuso claimed that United Bank was negligent in its dealings with her. The majority dismisses certiorari as improvidently granted on the negligence issue on the ground that the claim was not properly raised in the trial court. I disagree. A short and plain statement of the negligence claim was contained in the complaint.[2] Mancuso alleged that the bank was negligent, that the bank caused her funds to be subject to setoff, and that she was injured as a direct and foreseeable result of the bank's negligence. The negligence issue, which was briefed and argued, should be addressed on certiorari.

To recover on a claim of negligence, a plaintiff must show that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries or damages. *Observatory Corp. v. Daly*, 780 P.2d 462, 465 (1989). The court must determine the existence and scope of the defendant's duty in light of the particular circumstances of the case, including the foreseeability of harm, the social utility, and the magnitude of the burden on the defendant. *Id.* at 466.

Generally, a bank does not have a duty to give financial planning advice to its depositors. However, if a bank undertakes to render services for another, it may assume a duty to exercise reasonable care if the other detrimentally relies upon the advice given. *See Jefferson County School Dist. R–1 v. Justus*, 725 P.2d 767, 770 (Colo.1986); Restatement (Second) of Torts § 323(b) (1965). In her amended complaint, Mancuso claimed that the bank negligently failed to inform her of other account options.[3] The affidavit and depositions submitted on behalf of Mancuso established a question of fact as to the extent to which the bank undertook to give financial planning advice to Mancuso in 1977 and wheth-

---

**1.** According to the record, the 1977 certificates of deposit came due in October 1978, April 1980, and October 1981. The setoff was exercised in 1985 against accounts that were opened in March 1981 and October 1982.

**2.** The requirements for a proper complaint are set forth in C.R.C.P. 8:
    (a) Claims for Relief. A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief....
    ....
    (e) Pleading to Be Concise and Direct....
    (1) Each averment of a pleading shall be sim-

ple, concise, and direct.... No technical forms of pleading or motions are required. Pleadings otherwise meeting the requirements of these rules shall not be considered objectionable for failure to state ultimate facts as distinguished from conclusions of law.

**3.** Mancuso had both a personal and a joint account at Republic, but she chose to open only joint accounts at United Bank. Had she kept a personal account, the funds in that account would have been insulated from setoff when the loans guaranteed by Neal went into default.

er it exercised reasonable care in rendering that advice.

Mancuso also claimed United Bank was negligent in failing to warn her that her funds were subject to seizure if her son ever defaulted on a loan.[4] Generally, a party to a business transaction has a duty to exercise reasonable care to disclose facts basic to that transaction "if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect the disclosure of those facts." *Bair v. Public Service Employees Credit Union,* 709 P.2d 961 (Colo.App.1985) (quoting Restatement (Second) of Torts § 551(2)(e) (1977)). The reasonableness of United Bank's lack of disclosure should be determined in light of the circumstances apparent to the bank at the time of the event, not those which arise after the fact. *See McMillan v. Hammond,* 158 Colo. 40, 404 P.2d 549 (1965). When Mancuso opened the account in 1977, Neal had not borrowed any funds from United Bank. Consequently, the bank was under no duty to warn against a possible setoff. To impose such a rule would require banks to warn customers of all conceivable legal consequences related to opening an account.

Mancuso also claims that the bank had a duty to inform her that she should seek the advice of an attorney prior to opening an account. Although an attorney might have provided help in arranging her affairs in a prudent manner, a bank has no duty to advise potential depositors to obtain counsel before opening accounts.

Since a factual dispute exists as to what was said and what occurred when Mancuso opened her accounts at United Bank in 1977, we must assume the bank was negligent in advising Mancuso to open those accounts. Mancuso presented no evidence that the bank's presumed negligence in 1977 extended to the opening of the joint accounts in 1981 and 1982—the accounts

against which the right of setoff was exercised. Since Mancuso did not raise a material issue of fact as to United Bank's negligence and the damage she incurred, summary judgment was proper. Neal made no withdrawals from the 1977 joint accounts, and his subsequent indebtedness to the United Bank did not result in a setoff against the 1977 accounts. Accordingly, any breach of duty by the bank in 1977 did not cause damage to Mancuso. *See Continental Airlines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo.1987) (summary judgement is proper if the nonmoving party fails to establish a triable issue of fact).

### III

The majority holds that there is a triable issue as to (1) whether United Bank's advice to Mancuso through its "personal banker" was sufficient to impose a constructive trust, or (2) whether a constructive trust should be imposed because the bank knew Mancuso's son held the account subject to a resulting trust.

A constructive trust is generally used as a remedy to prevent unjust enrichment of the party holding title to the property. *See Page v. Clark,* 197 Colo. 306, 315–16, 592 P.2d 792, 797–98 (1979). Because the majority has treated the constructive trust issue as a legal theory rather than as a remedy, I write separately as to the standards applicable to the imposition of a constructive trust and to clarify the connection between a resulting trust and the setoff of a codepositor's funds.

### A

Mancuso asserted that the bank held the funds in the joint accounts subject to a constructive trust because, by setting up those accounts, the bank breached a confidential relationship it had with Mancuso. *Cf. Page v. Clark,* 197 Colo. 306, 316, 592 P.2d 792, 798 (1979) (a constructive trust may be imposed to set aside transactions within the scope of a confidential relation-

---

**4.** Mancuso's affidavit states that she requested an account that would give Neal limited access in case of an emergency. Arguably, the joint account chosen was insufficient to achieve that goal since Neal had equal access at all times.

ship which has been abused). Finding that Mancuso alleged facts which could support the imposition of a constructive trust, the majority held summary judgement on this issue to be improper. I respectfully dissent.

In a motion for summary judgment, once the moving party has met its burden of showing that no genuine issue of material fact exists, the nonmoving party must present evidence to support the existence of a genuine issue of material fact. *Continental Airlines Inc. v. Keenan*, 731 P.2d 708, 712–13 (Colo.1987). Mere allegations are insufficient to prevent the granting of summary judgment. *See id.* at 713. Mancuso presented no evidence of a confidential relationship pertaining to the 1981 and 1982 accounts, against which the setoff was exercised. Therefore, even assuming an abuse of a confidential relationship could be proven with respect to the 1977 accounts, summary judgment on the constructive trust issue was proper. However, since the majority opinion is based in part on an analysis of the constructive trust issue, I address this issue to clarify the application of a constructive trust under the facts in this case.

A bank generally does not have a confidential relationship with its customers. Rather, the deposit of funds in a bank creates a debtor-creditor relationship: the bank's obligation is to pay the funds to the depositor or to the depositor's written order. *Cox v. Metropolitan State Bank*, 138 Colo. 576, 584, 336 P.2d 742, 747 (1959).[5] Opening a new account for a customer or having an employee with the title "personal banker" does not raise this debtor-creditor relationship to the level of a confidential relationship.

There is no evidence that the bank attempted to gain Mancuso's trust and confidence. Although a bank may take on the duties of a fiduciary or may create a confidential relationship, a "personal banker's" recommendation of a joint account is not enough to impose a duty to inform the

depositor of all liabilities related to such accounts. *See Simmons v. Jenkins*, 230 Mont. 429, 432–34, 750 P.2d 1067, 1070 (1988); *Tokarz v. Frontier Fed. Savings & Loan Ass'n*, 33 Wash.App. 456, 458–60, 656 P.2d 1089, 1092 (1983). In *Simmons v. Jenkins* a bank's fiduciary duty was reviewed:

The relationship between a bank and its customer usually does not give rise to a fiduciary duty. *Deist v. Wachholz* (Mont.1984), 678 P.2d 188, 193, 41 St.Rep. 286, 290. There is an exception, however, when the Bank is thrust beyond the simple role of creditor and into the role of an advisor. In *Deist* we held that a bank officer is vested with a fiduciary duty were [sic] there is a long history of dealing with the bank and evidence of the bank acting as a financial advisor in some past capacity....

More recently, however, we encountered a situation where a bank had no fiduciary duty. In *Pulse v. North American Land Title Co.* (Mont.1985), 707 P.2d 1105, 42 St.Rep. 1578, the appellants, the Pulses, were involved in a land purchase which their bank financed through a mortgage. When problems arose, the Pulses sued for breach of fiduciary duty. We held that because the special circumstances that existed in *Deist* were not present, the bank had no fiduciary duty to the Pulses. Unlike *Deist*, the bank had not located buyers for the Pulses; the bank was not a party to the transaction beyond its role as the buyer's lender; the sale was not a product of the bank's advice; and the Pulses had not dealt with the bank extensively or exclusively.

230 Mont. at 433, 750 P.2d at 1070. Here, Mancuso's dealings with United Bank's personal banker consisted of a conversation relating to opening a new account. There was no history of exclusive dealing with the bank or of the bank acting as a financial advisor. Thus, under *Simmons*, Unit-

---

5. In *Cox* the court upheld the bank's setoff of funds in a depositor's account that were held in trust for the plaintiff. However, in that case (1) the depositor's debts were incurred before the money was deposited into the account as a special deposit, and (2) the bank had not detrimentally relied on or changed its position based on that deposit.

ed Bank did not owe Mancuso a fiduciary duty.

In *Tokarz*, the court emphasized that a bank's fiduciary duty may turn on advice regarding a complex financial transaction:

> Present-day commercial transactions are not, as in past generations, primarily for cash; rather, modern banking practices involve a highly complicated structure of credit and other complexities which often thrust a bank into the role of an adviser, thereby creating a relationship of trust and confidence which may result in a fiduciary duty upon the bank to disclose facts when dealing with the customer.

33 Wash.App. at 459, 656 P.2d at 1092. The opening of a joint savings account or a joint certificate of deposit is not, however, the type of complex and sophisticated transaction that imposes a fiduciary duty.

A finding of no fiduciary duty, however, is not dispositive. A constructive trust may also be imposed to set aside a transfer of property obtained by the abuse of a confidential relationship. *Page v. Clark*, 197 Colo. at 315–16, 592 P.2d at 798. Although the standard for a confidential relationship is less restrictive than that applicable to a fiduciary relationship—"[a] confidential relationship arises when one party has justifiably reposed confidence in another"—the burden of establishing a confidential relationship is on the party wishing to set aside the transaction. *Id.* Since there is no evidence that the bank held its personal bankers out as giving more than basic account advice, Mancuso has failed to prove the existence of a confidential relationship.

Even assuming that a confidential relationship existed, a constructive trust is nevertheless improper because the record lacks evidence that United Bank abused the relationship. "If one person is in a confidential but not a fiduciary relation to another, a transaction between them will not be set aside at the instance of one of them unless in fact he placed confidence in the other and the other abused the confidence placed in him." *Id.;* Restatement of Restitution § 166 comment d (1937). Under the facts of this case, to prove abuse it would be necessary to show not only that Mancuso placed confidence in her personal banker, but also that the banker either (1) affirmatively misled Mancuso into opening a joint account for the purpose of reserving United Bank's right of setoff against Neal's prospective accounts or (2) told Mancuso that there would be no right of setoff. Since there is nothing in the record to suggest that United's representative misused her superior knowledge to Mancuso's disadvantage when she advised her to open a joint account or that United Bank subsequently failed to perform any promise, a constructive trust is not a proper remedy.

B

Mancuso asserted that United Bank's setoff of the funds in the joint accounts against the loans guaranteed by Neal was unlawful because the bank knew that Neal held those funds as trustee for Mancuso.

Section 11–6–105, 4B C.R.S. (Supp.1990), provides:

> [W]hen a bank deposit in any bank transacting business in this state is made in the names of two or more persons payable to them or to any of them, ... such deposit shall be deemed, so far as the rights and liabilities of the bank are concerned, to be owned by said persons in joint tenancy with the right of survivorship, but the bank has the right of setoff against such deposit, to the extent thereof, to collect a debt owed to the bank by any joint depositor.

Thus, while some states allow a bank to exercise its right of setoff only to the extent of the interest of the codepositor-debtor, *see* Teselle, *Banker's Right of Set–Off,* 34 Okla.L.Rev. 40 (1981), the Colorado legislature has chosen to allow the setoff against the entire account of the debtor without regard to that person's specific interest in the account.

Despite this legislative mandate, Mancuso asserts that Neal held the money in the joint accounts subject to a resulting trust and that, because United Bank had notice of that fact, it was not entitled to apply the funds in those accounts as a setoff against Neal's debts. A resulting trust may arise where an express trust fails in whole or in part [or] ... where property is pur-

chased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person.... In each of these cases there is an inference that the person taking title to the property is not intended to have the beneficial interest and in each of these cases the inference arises from the character of the transaction.[6]

*Page v. Clark,* 197 Colo. at 314–15, 592 P.2d at 797. *See generally* Restatement (Second) of Trusts § 322–26 (1959). Here, no evidence was presented to show the existence of an express trust. Evidence that Mancuso opened the joint accounts with her own money could give rise to a resulting trust in her favor. However, even if this were shown, when property is put in the name of a relative, the presumption is that the transferor intended to make a gift, and a resulting trust may not arise unless that presumption is rebutted. *See* maj. op. at 739; Restatement (Second) of Trusts § 442. Mancuso presented no evidence to rebut this presumption.

Even if a resulting trust were shown to exist between Mancuso and Neal, it would only be enforceable against United Bank if the bank knew or should have known that the money was held in trust for Mancuso. No connection was shown between the original accounts opened in 1977 and those opened in 1981 and 1982 against which the setoff was exercised. Without more, any knowledge the bank may have had of a resulting trust at the opening of the original accounts would not provide a basis for reversing the summary judgment.

Accordingly, the trial court properly entered summary judgment for United Bank. The court of appeals affirmed the summary judgment and I would affirm the court of appeals.

ROVIRA, C.J., and VOLLACK, J., join in this special concurrence and dissent.

---

**6.** A resulting trust may also arise "where an express trust is fully performed without exhaust-   ing the trust estate." *Page v. Clark,* 197 Colo. 306, 314, 592 P.2d 792, 797 (1979).