No.   92-619

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

E. E. KUHNS,

        Plaintiff and Appellant,

  -vs-

THOMAS W. SCOTT and FIRST
INTERSTATE BANCSYSTEM OF
MONTANA, INC., a Montana
corporation, and JOHN DOES
I THROUGH X,

        Defendants and Respondents.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Eldon E. Kuhns, Pro Se, Billings, Montana

       For Respondents:

          Sam E. Haddon, Esq., Randy J. Cox, Esq.; Boone,
          Karlberg & Haddon, Missoula, Montana

FILED

JUN 1 0 1993

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  May 6, 1993

Decided:  June 10, 1993

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant Eldon E. Kuhns (Kuhns) appeals an order of the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment to respondents Thomas W. Scott (Scott) and First Interstate Bancsystem of Montana, Inc. (FIBM). We affirm.

On November 19, 1984, respondent Scott, as president and chief executive officer of Security Banks of Montana, Inc. (now First Interstate Bancsystem of Montana, Inc.) executed an agreement to buy all of the issued and outstanding shares of Montana Bancsystem, Inc. (MBI) for $36 million. Kuhns was MBI's principal shareholder. The transaction, described in the stock purchase agreement signed by Scott and Kuhns, was contingent on Federal Reserve Board approval. The relevant provision follows:

> The Federal Reserve Board shall have approved under the Bank Holding Company Act of 1956, as amended, the transactions contemplated by this Agreement. Such approval shall not contain any material conditions unacceptable to Buyer.

After preliminary discussions with Federal Reserve Board staff, FIBM submitted a final application for approval of the stock purchase to the Federal Reserve Board of Governors (Board). The application was reviewed and approved by MBI's general counsel, Mark Safty, and MBI's consultant, Samuel Chase, before it was submitted.

On February 22, 1985, the Board issued an order denying FIBM's application. Although the order described FIBM as a well-managed company, owning banks in satisfactory condition, the Board was "seriously concerned" about the effect of the proposed acquisition

2

on FIBM's resources, "particularly the substantial reduction of [FIBM's] capital and [FIBM's] increased reliance on debt." Finding that the proposed acquisition, which involved thirteen banks and "a significant amount of debt" held by MBI, would reduce FIBM's tangible primary capital below the level specified in its Capital Adequacy Guidelines, the Board concluded that the acquisition would not be in the public interest.

In April 1986, Kuhns and two of MBI's other shareholders, Christine Goodnow and Robert Grimes, brought an action against Scott and FIBM, claiming breach of the stock purchase agreement and two contingent contracts—a consulting agreement and an employment agreement—between FIBM and Kuhns. The complaint alleged that Kuhns had been damaged in an amount equal to the total value of the compensation and benefits he would have received under the consulting and employment agreements, or approximately $3.6 million.

In addition to breach of contract, the plaintiffs claimed that Scott had "deliberately, improperly, and without justification or excuse caused FIBM to breach its duties under the stock purchase agreement" and thus interfered with Kuhns' prospective contractual relations with FIBM, and that FIBM had "deliberately and systematically operated its businesses and arranged financing of its MBI acquisition in a manner designed and intended to cause the Federal Reserve Board to disapprove the transaction" and thus breached its duty of good faith and fair dealing.

The respondents denied all allegations and in their answer

3

took the position that the plaintiffs were estopped by their own conduct or that of their agents from asserting any claims against Scott and FIBM.

In September 1986, Kuhns filed a petition for relief in bankruptcy court, under Chapter 11. His lawyer for the bankruptcy proceeding moved to withdraw as counsel for plaintiff Robert Grimes in the breach of contract action, on the grounds that Grimes had sued Kuhns and was therefore listed as Kuhns' creditor, creating a conflict of interest for the lawyer. In July 1987, the plaintiffs filed a notice of substitution of counsel, but by April 1989 both the substituted firms had withdrawn.

In November 1989, FIBM moved to dismiss the breach of contract action for failure to prosecute, pointing out that the plaintiffs had taken no action other than filing a set of interrogatories and requests for discovery in July 1987. Kuhns' bankruptcy lawyers filed an objection, stating that the plaintiffs were without representation in this case, though their firm was representing Kuhns in bankruptcy court; that the bankruptcy court had refused to authorize litigation to proceed until reorganization was more certain; and that until Kuhns' reorganization plan was confirmed, it would be unfair to dismiss the plaintiffs' breach of contract action.

The bankruptcy court approved Kuhns' reorganization plan in December 1989, and the District Court denied FIBM's motion to dismiss in January 1990. A scheduling conference was held on April 3, 1990, but the District Court decided that no schedule for

4

discovery or trial could be set because the plaintiffs were not represented by counsel. On April 5, 1990, the court ordered the plaintiffs to obtain counsel by May 7, 1990.

On May 11, 1990, the District Court dismissed plaintiffs Grimes and Goodnow on FIBM's motion. Gene Huntley of Baker had entered an appearance as counsel for Kuhns on May 7, and on May 14 he entered a general appearance for Grimes and Goodnow, too late to prevent them from being dismissed by the court. On June 12, 1991, FIBM moved for summary judgment on the grounds that no contract existed because a condition precedent--Federal Reserve Board approval--had not been fulfilled, and that Kuhns could not maintain in his individual capacity a breach of contract claim that belonged to MBI.

Kuhns requested an extension of the deadline for responding to FIBM's motion, stating that Mr. Huntley had breached his contingent fee hiring agreement by refusing to respond to FIBM's motions and that he would have to respond pro se. An extension was granted and on July 1, 1991, Kuhns filed a brief and affidavit, pro se, contending that factual issues existed, in particular the issue of whether the respondents had breached the covenant in the stock purchasing agreement that required them to use reasonable and continuous efforts to satisfy the conditions precedent, including adequate financing.

Mr. Huntley withdrew as Kuhns' lawyer on July 10, 1991, citing Rule 1.16(b) of the Rules of Professional Conduct, which allows a lawyer to withdraw if the client makes representation unreasonably

difficult. In his accompanying affidavit, Mr. Huntley stated that he had asked Kuhns to provide an independent banking expert who would testify that FIBM intended that the Board would disapprove the purchase of MBI, and that Kuhns had promised to provide such an expert but had not done so.

The District Court granted summary judgment in favor of FIBM on October 16, 1992. Kuhns appealed, pro se, raising several issues. We restate them as follows:

1. Whether the District Court erred in finding that no issues of material fact exist in this case.

2. Whether the District Court erred in finding no evidence that Scott caused FIBM to breach its duties under the stock purchase agreement between MBI and FIBM.

3. Whether the District Court erred in finding no evidence that FIBM breached the implied covenant of good faith and fair dealing.

The primary issue is whether the District Court erred in granting summary judgment, not as to the plaintiffs' original breach of contract claim but as to their claims regarding Scott's alleged interference with contract and FIBM's alleged breach of the implied covenant of good faith and fair dealing. The District Court determined correctly that the stock purchase agreement never became binding on either MBI or FIBM, due to failure of a condition precedent--Federal Reserve Board approval. See Management, Inc. v. Mastersons, Inc. (1980), 189 Mont. 435, 616 P.2d 356 (buyers' failure to obtain financing rendered a real estate contract a nullity because the "subject to financing" clause was a condition precedent).

Summary judgment is appropriate when there is no genuine issue

6

of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The initial burden of demonstrating the absence of a genuine issue of material fact lies with the moving party. Ravalli County Bank v. Gasvoda (1992), 253 Mont. 399, 401, 833 P.2d 1042, 1043. Once the moving party has met that burden, the party opposing summary judgment must establish that genuine issues of material fact exist. Peschel v. Jones (1988), 232 Mont. 516, 521, 760 P.2d 51, 54. Conclusory or speculative statements are insufficient to raise a genuine issue of material fact. Simmons v. Jenkins (1988), 230 Mont. 429, 432, 750 P.2d 1067, 1069.

I

Did the District Court err in finding that no issues of material fact exist in this case?

Kuhns argues that whether FIBM used "reasonable and continuous efforts to cause every condition precedent to the other party's obligations to be satisfied," as the stock purchase agreement required, is an issue of material fact. He claims, for example, that his briefs, affidavits, and exhibits make it "abundantly clear" that FIBM had a duty to arrange "such debt and equity financing as was necessary" to meet the Federal Reserve Board's requirements. He claims further that in a letter dated January 2, 1985, he informed FIBM of several ways to "improve FIBM's financial resources, decrease debt and increase capital." Because FIBM did not adopt any of these suggestions, Kuhns argues, FIBM did not make reasonable efforts to obtain Board approval.

7

FIBM contends that the contract did not require FIBM to comply with material conditions unacceptable to it, even if those conditions were imposed by the Board. William G. Wilson, FIBM's senior vice president, stated in his affidavit that all of Kuhns' suggestions would have increased the cost of acquisition, and one would have required a $5 million to $7.5 million loan from the Scott family to FIBM.

The stock purchase agreement provided for financing as follows:

> Buyer [FIBM] shall have arranged such financing as is reasonably necessary for it to consummate the purchase of Shares hereunder, on terms and conditions reasonably acceptable to it . . . .

The record shows that FIBM obtained a commitment from First Bank Minneapolis to loan FIBM $25 million, issued in November 1984 and valid through June 1985. Kuhns does not argue that this amount was not adequate to pay the purchase price; instead, he argues that the agreement called for "adequate financing," which is "that which will be approved by the Fed Board." As the Board had expressed its concerns about debt financing before FIBM submitted its proposal, Kuhns argues, FIBM was obligated under the contract to arrange financing other than debt financing.

The District Court characterizes this dispute as a disagreement as to what was required of FIBM under the "reasonable efforts" clause in the stock purchase agreement, rather than a factual issue. We agree. A mere difference of interpretation does not amount to a genuine issue of material fact. See Sprunk v. First Bank System (1992), 252 Mont. 463, 830 P.2d 103 (plaintiff,

8

appealing from summary judgment in favor of a bank holding company, recited "facts with his own interpretations and conclusions," which, we decided, did not raise a genuine issue of material fact).

Kuhns failed to support his interpretation of the "reasonable efforts" clause with evidence that FIBM did not make efforts that were reasonable under the terms of the contract. FIBM, on the other hand, presented evidence that MBI's own consultant, along with MBI's general counsel, had approved FIBM's final application to the Board; that FIBM had spent approximately $400,000 in attorneys' fees in attempting to obtain Board approval; and that FIBM actually had obtained adequate financing.

Nothing in the stock purchase agreement required FIBM to obtain a specific type of financing or to increase its capital. In fact, Mark Safty, MBI's general counsel in 1984-85, stated in his affidavit that "it was the intention and agreement of the parties that . . . the bottom-line cost of the transaction to FIBM could not be increased," and that FIBM had no contractual obligation to "inject additional capital."

We conclude that there is no genuine issue of material fact with regard to FIBM's reasonable efforts to obtain Board approval of its proposed acquisition, or with regard to the adequacy of FIBM's proposed financing. As Kuhns has not met his burden of establishing that genuine issues of material fact exist, FIBM is entitled to judgment as a matter of law.

## II

Did the District Court err in finding no evidence that Scott

caused FIBM to breach its duties under the stock purchase agreement?

In their original complaint, Kuhns and the other plaintiffs alleged that Scott deliberately and maliciously caused FIBM to breach its duties under the stock purchase agreement. In his brief on appeal, Kuhns merely contends that Scott, as chief executive officer of FIBM, could have increased FIBM's equity capital to "bring it in compliance with the [Board's guidelines]," but did not. He suggests that Scott "may well have had a personal conflict" because increasing FIBM's equity capital would have meant diluting Scott's ownership interest in FIBM.

The District Court found that Kuhns had presented no evidence that Scott acted in a manner that would subject him to personal liability. We agree. To establish a claim against Scott individually, Kuhns would have to show that Scott had acted for his own pecuniary benefit and against the best interests of the corporation (FIBM); or that he had acted outside the scope of his employment. Bottrell v. American Bank (1989), 237 Mont. 1, 25, 773 P.2d 694, 708. Instead, Kuhns merely speculated about Scott's motivation. No evidence appears anywhere in the record that Scott acted for his own benefit or against FIBM's best interests.

We conclude that no genuine issue of material fact exists as to Scott's personal liability and that Scott is entitled to judgment as a matter of law.

### III

Did the District Court err in finding no evidence that FIBM

10

breached the implied covenant of good faith and fair dealing?

The plaintiffs alleged in their complaint that FIBM "deliberately and systematically" arranged financing of the MBI acquisition "in a manner designed and intended to cause the Federal Reserve Board to disapprove the transaction," contrary to the standard of good faith and fair dealing. On appeal, Kuhns argues that because FIBM knew its proposed financing would be unacceptable to the Federal Reserve Board, and did nothing, it is "in clear violation of § 28-1-211, MCA."

In Story v. City of Bozeman (1990), 242 Mont. 436, 450, 791 P.2d 767, 775, we held that every contract contains an implied covenant of good faith and fair dealing, and that § 28-1-211, MCA, defines the required standard of conduct as "honesty in fact and the observance of reasonable commercial standards of fair dealing."

Here, the District Court properly concluded that Kuhns had presented no evidence showing that FIBM acted dishonestly or in contravention of reasonable commercial standards. Indeed, the record indicates that FIBM tried in good faith to achieve Federal Reserve Board approval. No reasonable commercial standard required FIBM, or Scott, to increase FIBM's cost of acquiring MBI in order to obtain Board approval. For that reason, we need not consider whether a special relationship existed that would support tort damages.

We hold that no genuine issue of material fact exists regarding a breach of the implied covenant of good faith and fair dealing, and that FIBM is entitled to judgment as a matter of law.

11

Affirmed.

_John Conway Harrison_
Justice

We concur:

_/s/ J.A. Turnage_
Chief Justice

_Karla M. Gray_

_William E. Hunt_

_Terry N. Trieweiler_
Justices

12

June 10, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Eldon E. Kuhns
P.O. Box 602
Billings, MT 59103-0602


Sam E. Haddon, Esq.
Randy J. Cox, Esq.
BOONE, KARLBERG & HADDON
P.O. Box 9199
Missoula, MT 59807-9199


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tucker_____
    Deputy