JUSTICE RICE,
dissenting.
¶102 I dissent from the Court’s resolution of Issues 2 and 7, and would remand for a new trial.
¶103 Under Issue 2, the Court announces a new rule-that “advice-of-counsel, when used as an affirmative defense at trial, must be pled as such under the requirements of M. R. Civ. P. 8(c).” Opinion, ¶ 54. Thus, the Court has overruled McGuire’s holding that the advice-of-counsel defense "may be shown under a general denial in the answer.” McGuire, 184 Mont. at 413, 603 P.2d at 256 (quoting Materson v. Pig’n Whistle Corp., 326 P.2d 918, 929 (Cal. App. 1958)). While I concur with this conclusion, I believe it is unfair to Northwestern to change a previously clear rule which was in effect and upon which it relied during the litigation. Under McGuire, the District Court incorrectly ruled that Northwestern had waived the defense and was not entitled to so instruct the jury. I believe Northwestern was prejudiced thereby. The Court reasons that Northwestern was not harmed because the District Court allowed Northwestern to present evidence concerning its reliance upon its counsel’s advice to defend against the allegation *60 it acted in bad faith. However, such evidence must be admitted in any event in support of a general denial of the claim. The definition of probable cause we have adopted from the Restatement (Second) of Torts §675 (1977) for malicious prosecution cases is satisfied when a defendant reasonably believes that the claim he pursued was valid under applicable law “in reliance upon the advice of counsel.” Hughes v. Lynch, 2007 MT 177, ¶ 16, 338 Mont. 214, 164 P.3d 913. Thus, such evidence must be admitted in the course of proving or denying the proof of a malicious prosecution claim.
¶104 Northwestern wanted, and I believe was entitled to, more-an instruction that reliance upon advice of counsel could be a complete defense to the claim. Indeed, the Retirees used the counsel defense as a basis to both request that Hastings be added as a defendant and to seek discovery of privileged documents. As a result, the District Court granted Retirees’ motion to amend the complaint and also granted their motion to compel discovery of materials that would otherwise be protected by the attorney-client and work-product privileges. The privileged documents sought by Retirees were certainly relevant to their malicious prosecution claim, as they had to prove that Northwestern lacked probable cause to file the bankruptcy action. However, after permitting the additional claim and the discovery to support the additional claim, the District Court barred Northwestern from raising the actual defense-which Northwestern was not required to affirmatively plead under McGuire. I believe Northwestern was unfairly constrained in the ability to defend itself and would order a new trial.
¶105 I also dissent with the Court’s resolution of Issue 7, which I believe extensively broadens our law regarding the personal liability of corporate employees in order to affirm the imposition of personal liability here. Our cases illustrate, and we have instructed, that Ttjhe personal nature of the agent’s actions forms the narrow exception to the general policy that officers and agents of a corporation must be shielded from personal liability for acts taken on behalf of the corporation.” Crystal Springs Trout Co. v. First St. Bank, 225 Mont. 122, 129, 732 P.2d 819, 823 (1987) (emphasis added) (citing Little v. Grizzly Mfg., 195 Mont. 419, 636 P.2d 839 (1981)). The corporate officers’ actions in this case did not exceed the scope of their employment, and did not trigger this narrow exception.
¶106 In Bottrell v. Am. Bank, 237 Mont. 1, 12-14, 773 P.2d 694, 701-02 (1989), the bank, under the direction of its officers, wrongfully exercised its right to setoff of a note not yet due and payable, before *61 making any demand of the borrower for payment, as required under the terms of the note. The plaintiffs suffered lost profits as a result of the bank’s actions. Bottrell, 273 Mont. at 22, 773 P.2d at 707. We held the officers could not be held personally liable for these obvious errors, explaining:
[T]he actions of officers Beaton and Derrig were not on behalf of themselves as individuals or for their own pecuniary benefit, nor were their actions against the best interests of the corporation for which they were employed. They acted within the scope of their employment, and in furtherance of corporate interest. As such, they are entitled to the protection of the corporate shield from personal liability.
Bottrell, 237 Mont. at 25, 773 P.2d at 708.
¶107 Likewise, in Kuhns v. Scott, 259 Mont. 68, 74, 853 P.2d 1200, 1204 (1993), the plaintiffs contended the CEO of First Interstate Bancsystem of Montana, Inc., (FIBM) maliciously caused FIBM to breach its duties under the stock purchase agreement between the parties. We rejected plaintiffs’ assertions that the CEO had failed to increase FIBM’s capital and obtain the FIBM Board’s approval of the stock purchase for the reason that his personal interest in the bank’s ownership would have been diluted by doing so. Kuhns, 237 Mont. at 74, 853 P.2d at 1204. We held that in order to establish a claim against the CEO, the plaintiffs “would have to show that [the CEO] had acted for his own pecuniary benefit and against the best interests of the corporation (FIBM); or that he had acted outside the scope of his employment.” Kuhns, 259 Mont. at 74-75, 853 P.2d at 1204 (citing Bottrell, 237 Mont. at 25, 773 P.2d at 708). We reasoned that plaintiffs’ assertions about the CEO’s ownership interest were speculative and the lack of evidence about a personal benefit or that he had acted against FIBM’s best interests warranted the entry of summary judgment. Kuhns, 259 Mont. at 75, 853 P.2d at 1204-05.
¶108 In cases where we have reached the opposite result, our decisions turned on substantial evidence demonstrating the employees had knowingly made false and misleading statements - or taken fraudulent actions. As the Court notes, it is the “personal nature” of these agents’ actions that permitted the agents to be held personally liable for the actions they took on behalf of the corporation. Opinion, ¶ 91. In Crystal Springs Trout Co., 225 Mont. at 128, 732 P.2d at 822, 823, the president and primary shareholder of the First State Bank repeatedly lied about filing a loan application with the FmHA, about banks he had contacted, and about the status of plaintiffs’ financing. *62 We described the officer’s conduct as ‘intentional and very personal,” citing the conclusion of the trial court:
The conduct of defendant [bank president], acting at all times as agent of the First State Bank of Froid and with the acquiescence and tacit approval of the directors of the bank, constituted willful and wanton misconduct consisting of conscious breach of trust and fiduciary duty, intentional deception, flagrant breach of the ethical cannons [sic] of both the legal and banking profession, a studied and extended course of fraudulent misrepresentation and knowing betrayal of a lifetime friendship, all with reckless disregard for the rights and interest of the plaintiffs herein, unjustified by any circumstance and “malicious” and “oppressive” within the meaning of those terms as applied in the law of torts.
Crystal Springs Trout Co., 225 Mont. at 129, 732 P.2d at 823.
¶109 In Poulsen v. Treasure St. Indus., 192 Mont. 69, 72, 75, 626 P.2d 822, 824-25 (1981), the president of Treasure State Industries, Inc., made clearly untruthful statements about the company’s compliance with health regulations to plaintiffs, who were looking to purchase the concrete block plant operated by the company, and thereby induced plaintiffs to purchase the plant. We held that the president was personally liable because his individual acts were fraudulent, meeting all of the elements of actual fraud. Poulsen, 192 Mont. at 79, 82, 626 P.2d at 828-29.
¶110 The Retirees’ allegations that the individual defendants tortiously a participated in the termination of the Top Hat Contracts during the bankruptcy court process are directed to actions clearly within the scope of the defendant’s employment. There is no substantial evidence, as in Crystal Springs and Poulsen, that these corporate officers made false statements, acted fraudulently, or acted in pursuit of personal gain. The jury found that the officers were not liable for tortious interference with the contracts. Further, there is no evidence that the bonuses, which the Retirees assert is proof of the officers’ personal pecuniary gain, were linked to the decision to terminate the contracts. The bonuses were provided to the officers for their role in guidiñg Northwestern through its reorganization and emergence as a new entity, in accordance with common business practices. Perhaps in the times we now live such common corporate practices are popularly thought to be inappropriate. Nonetheless, without more, these bonuses do not constitute a basis for personal liability under our precedent. The evidence is that these rewards were given for the officers’ actions on behalf of the company. Thus, Retirees’ *63 theory that the officers personally benefitted directly from the Top Hat situation requires the same sort of speculation we rejected as insufficient in Kuhns. The evidence does not demonstrate that Retirees’ claims fit within the ‘harrow exception” to the general rule against personal liability. Crystal Springs Trout Co., 225 Mont. at 129, 732 P.2d at 823. Nothing close to what we condemned at length in Crystal Springs Trout Co. occurred here.
¶111 I would enter judgment in favor of the individual defendants on the claim of personal liability and remand for a new trial.
JUSTICE WARNER joins the dissent of JUSTICE RICE.