DA 11-0483

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 21

JUSTIN and SUSAN CONNER,

      Plaintiffs and Appellants,

    v.

CITY OF DILLON,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DV 10-13403
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Francis P. (Frank) McGee, Attorney at Law; Butte, Montana

      For Appellee:

          W. G. Gilbert, III, Dillon City Attorney; Dillon, Montana

Submitted on Briefs:  January 4, 2012

Decided:  February 1, 2012

Filed:

_____
                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Justin and Susan Conner appeal from the District Court's July 25, 2011 order granting summary judgment in favor of the City of Dillon and dismissing the action with prejudice.  We reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     The City of Dillon owns a water main line that diverts water from Rattlesnake Creek, as it has done since the early 1900s.  At the time of this action only ten residences receive water from this line and all are located outside the Dillon city limits.  In 1981 the City entered an agreement with Robert and Patricia McNeill allowing them to connect to the Rattlesnake Creek water main with "one water service" for their domestic water supply.  In 1994 the McNeills anticipated subdividing their property and selling a lot. They requested the City to approve a second water service for the new lot but that request was not approved, according to a letter from the Mayor, "because of a lack of information."  In 1997 the McNeills completed the subdivision and sold a parcel of their land.  The McNeills divided their water tap from the main line so that water could be piped to their house and to the subdivided lot.  As part of the subdivision process, a July, 1997 letter from the Mayor of the City of Dillon to the Montana Department of Environmental Quality states that the "Water Department of the City of Dillon" had granted permission to McNeill to "activate an existing water service to his property." The address given for this newly activated or permitted water service is the address of the

2

Conners' house. The City installed a water meter on the second tap alongside the meter for the McNeill lot, and began billing the owner of the subdivided lot for the water.

¶3 In 2004 the Conners bought the subdivided lot with the water tap, the City water meter, and the monthly City billing for water use all in place. The Conners submitted a $35 "meter deposit" to the City and obtained a receipt. Since September, 2004 the Conners have received and paid the City's monthly bills for water furnished to them through the McNeills' tap from the Rattlesnake Creek water main.

¶4 In the winter of 2008, Rattlesnake Creek and the water main both froze solid during a period of cold weather. By all accounts this was an unusual event. The City hired an excavator who dug the ice out of about a mile of Rattlesnake Creek, restoring the flow of water. The water main pipe remained frozen for a longer time, however, and the Conners were without water service for a period of weeks. During that time the City tried unsuccessfully to drill a water well to replace the Rattlesnake Creek water and to thaw the frozen water main pipe. The City offered a large water storage tank to the Conners, but they declined to use it. The City later supplied a portable toilet and bottled water to them.

¶5 In January, 2010 the Conners sued the City for damages arising from the interruption of water service, basing their complaint upon claims of breach of contract, negligence, and infliction of emotional distress. The City moved for summary judgment and both sides filed affidavits and briefs. The District Court referred the summary judgment to a Special Master who conducted a hearing and issued a decision in favor of the City. The Special Master found that there was no contract between Conners and the

3

City because they did not have a contract for water service approved by the City Commission as required by City Ordinance § 13.04.110. Therefore, the Special Master determined that the Conners' water use was unlawful and could not be the basis for a contract. In addition, the Special Master determined that the negligence claim was barred by City Ordinance § 13.04.150 which provides that the City can "shut the water off in its mains" and is not liable for claims for the resulting interruption of water service. The District Court subsequently entered summary judgment for the City based upon the Special Master's decision, and the Conners appeal.

## STANDARD OF REVIEW

¶6      On appeal this Court reviews a district court decision on summary judgment under the same criteria used by the district court under M. R. Civ. P. 56. *Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, 119 P.3d 47. This Court reviews a district court's conclusions of law to determine whether they are correct. *Gliko v. Permann*, 2006 MT 30, ¶ 13, 331 Mont. 112, 130 P.3d 155. This Court applies the same standard of review to an adopted master's report that we do to any other district court order. *Schmidt v. Colonial Terrace Assoc.*, 215 Mont. 62, 66, 694 P.2d 1340, 1343 (1985).

## DISCUSSION

¶7      *Issue One: Did the City of Dillon have a legal obligation to provide water to the Conners under express or implied contract?*   The Special Master, citing § 28-2-102, MCA, found that the elements of a contract are identifiable parties capable of contracting; the consent of the parties; a lawful object of the contract; and sufficient consideration.

4

The Special Master found that if there were a contract between the City and the Conners, it was an implied contract under § 28-2-103, MCA, which requires the same elements.

¶8 The Special Master concluded that the elements of a contract required by § 28-2-102, MCA, were present in this case, except for the requirement of "a lawful object." Neither party contests the determination that as between the City and the Conners there were parties capable of contracting, there was consent of the parties, and there was sufficient consideration. The Special Master determined that the Conners' water use was barred by the original contract between the City and the McNeills, by the City's 1994 denial of the McNeills' request for a second tap, and by the City's municipal code requirement that the City Council approve installation of a second water service.

¶9 On appeal, the Conners argue that they had an implied contract with the City and that they should be allowed to proceed with their claim that the City breached the contract. A contract may be either express or implied. The terms of an express contract are stated in words while both the existence and terms of an implied contract are manifested by the conduct of the parties, and a party may be estopped by its conduct from denying the existence of a contract. *C B & F Development Corp. v. Culbertson State Bank*, 256 Mont. 1, 5, 7, 844 P.2d 85, 87, 89 (1992). A party's performance of a contract for a period of years "strongly indicates" that a contract existed. *Somont Oil Co., Inc. v. Nutter*, 228 Mont. 467, 473, 743 P.2d 1016, 1019 (1987). A party is not allowed to take the benefit of a contract and then later repudiate its existence. *Williams v. Schwager*, 2002 MT 107, ¶ 28, 309 Mont. 455, 47 P.3d 839.

5

¶10 It is clear that neither the City's contract with the McNeills providing for "one water service" from the Rattlesnake Creek main line nor the 1994 denial of permission for a second tap bar the Conners' claim for breach of contract. The Conners were not parties to the City's contract with the McNeills, and it is clear that in 1997 the City's Water Department actually approved the activation of water service to the lot subsequently purchased by the Conners.

¶11 The conduct of the City of Dillon manifested the existence of a contract to furnish water to the Conners' lot by approving the water service as part of the subdivision process, installing a water meter, and billing and collecting for the water that was furnished. With this background the City is estopped from asserting there was no contract for this water service because the service was not "specifically approved by the City Council" as provided in § 13.04.110 of the Dillon Municipal Code. The City itself, through the 1997 letter to the DEQ, acted contrary to the position the City now takes, allowing its Water Department to act with regard to approving the second water service from the McNeill tap. An established course of conduct can vary the requirement of a regulation. *Lewis v. Huyser*, 264 Mont. 141, 145, 870 P.2d 95, 98 (1994) (requirement of building code varied by course of conduct). To the extent that the City of Dillon required City Council approval of the water tap for the Conners' lot, that requirement was completely undermined by the City's own clear course of conduct in this case. Therefore § 13.04.110 of the Dillon Municipal Code does not render the Conners' use of water illegal so as to vitiate the existence of an implied contract to furnish water.

6

¶12 The Special Master's conclusion, adopted by the District Court, that an illegal object barred finding an implied contract between the Conners and the City of Dillon is reversed.

¶13 *Issue Two: Is the liability of the City of Dillon in contract or tort limited by §* *13.04.150 of its Municipal Code?*

¶14 Section 13.04.150 of the Dillon Municipal Code provides:

> The water/sewer department reserves the right, at any time, without notice, to shut the water off in its mains for the purpose of making repairs or extensions or for any other purpose. No claim shall be made against the City of Dillon by reason of the breaking of any service pipe or from any other damage that may result from shutting off the water.

¶15 The Special Master construed this provision as an absolute bar to any claim that the Conners could have against the City under tort or contract. The Conners argue on appeal that this provision is not a bar to liability because it conflicts with Article II, Sec. 18 of the Montana Constitution. That section provides that governmental entities, including cities have no immunity from liability except as "specifically provided by law by a 2/3 vote of each house of the legislature."

¶16 This Court will avoid deciding constitutional issues whenever possible, *Weidow v. Uninsured Employers' Fund*, 2010 MT 292, ¶ 22, 359 Mont. 77, 246 P.3d 704, and we do so in this case. Section 13.04.150 of the Dillon Municipal Code clearly applies when the City itself decides to shut off water service. In the present case it is clear that the City did not decide to shut off the water service, but that it was shut off by the water freezing in

the creek and the main line.  Therefore, by its express terms, this provision does not apply here and cannot bar the Conners' claims in either tort or contract.

¶17     The City also argues that it is not liable to the Conners because the freezing water resulted from an act of God.  Neither the Special Master nor the District Court reached this issue and we do not address it here.

¶18     Nothing in this opinion should be construed as a determination that the City of Dillon is in fact liable to the Conners on either contract or tort claims.  We only hold that the Special Master and the District Court erred by dismissing the Conners' claims as a matter of law.  This matter is therefore reversed and remanded for further proceedings.


/S/ MIKE McGRATH


We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

8