**OMAR BASHITI D/B/A/ NO. 1 BEAUTY SUPPLY,**
**Appellant/Defendant**
**v.**
**TUTU PARK, LTD., Appellee/Plaintiff**

S. Ct. Civil No. 2016-0004
Supreme Court of the Virgin Islands
May 26, 2017

CLIVE C. RIVERS, ESQ., St. Thomas, USVI, *for Appellant*.

CHARLES S. RUSSELL, JR., ESQ., Moore, Dodson & Russell, P.C., St. Thomas, USVI, *for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(May 26, 2017)

SWAN, *Associate Justice*. Appellant, Omar Bashiti d/b/a No. 1 Beauty Supply ("Bashiti"), appeals the Superior Court's December 24, 2015 order which denied his motion to vacate an arbitration award for lack of the arbitrator's jurisdiction. Bashiti claims that he was not a signatory to the lease on which Tutu Park, Ltd. ("Tutu Park") based its claims; consequently, he argues that he did not assent to the arbitration clause contained in that lease. We affirm, albeit on different grounds from those articulated by the Superior Court.

## I. FACTS AND PROCEDURAL HISTORY

In April 2009, Tutu Park filed suit against Bashiti in the Superior Court, alleging that the parties entered into a five-year lease in October 2004, by which Bashiti rented commercial space identified as Unit 243, in a shopping center operated by Tutu Park.[1] According to Tutu Park, Bashiti breached that lease by failing to make timely rent payments and by abandoning the premises. Tutu Park requested past and future

---

[1] There is a dispute as to the precise date of the putative lease, as some of the parties' filings and pleadings reflect that it was dated October 1, 2004 and others recite a date of October 11, 2004. For purposes of this opinion, this discrepancy is immaterial.

compensation in the amount of $105,244.85, plus interest and late fees, based upon the terms of the parties' lease.

Approximately two months later, Bashiti filed an answer and counterclaim to Tutu Park's complaint, in which he attested that he and Tutu Park "entered into a lease agreement on October 1, 2004 . . . wherein [Tutu Park] agreed to lease approximately 6,463 square feet of floor area at the Tutu Park mall on St. Thomas to be used as a store." Bashiti also stated in his counterclaim that "[t]he lease was for a period of five years with three (3) options. The lease provided in part, that the monthly rental shall be $9,694.50 for the first two (2) years. Third and fourth year $10,771.66 monthly and the fifth year $11,848.83." Bashiti further alleged that "the lease provided that [Bashiti] shall be responsible for utilities, specifically electrical charges that he consumed." (Supp. J.A. 20-21.)

The parties were unable to settle the dispute, and in 2010 Tutu Park filed a motion to compel arbitration, based on the arbitration provision contained in an August 22, 2005 lease agreement with Bashiti for a separate space which Bashiti had rented in the Tutu Park shopping center, Unit 245.[2] Bashiti did not oppose this motion, and in May 2010, the Superior Court entered an order compelling the parties to arbitrate. Bashiti neither objected to the order nor requested that the Superior Court reconsider its order. On the second day of arbitration proceedings, in November 2011, Tutu Park produced a copy of an unsigned October 2004 lease, purportedly defining the relationship between Bashiti and Tutu Park with respect to Unit 243. Tutu Park's principal testified that he was unable to produce an executed lease for Unit 243. Bashiti subsequently objected to the arbitrator's jurisdiction, asserting that "neither the Lease [for Unit 243] nor the arbitration clause within it was binding upon him." (Supp. J.A. 142.) Bashiti then presented his case to the arbitrator.

Ultimately, the arbitrator ruled in favor of Tutu Park and entered an interim award in December 2011, in the amount of $219,577.10, plus interest. In response, Bashiti filed an objection with the Superior Court, in which he primarily argued that the arbitrator lacked jurisdiction because of Tutu Park's inability to produce a signed lease. The arbitrator entered

---

[2] We note that, in support of its motion to compel arbitration, Tutu Park referenced and attached this 2005 lease for Unit 245. This fact, however, does not bear on this Court's determination on the merits of this case.

a final award in favor of Tutu Park, which confirmed the interim award and added costs, attorney's fees, interest, and other concomitant expenses to the award.

Bashiti then filed a motion to vacate the arbitrator's award, averring that the parties "were so deeply divided about the essential terms of the contract that Tutu Park was never able to get Bashiti to initial any of the terms, or to execute the lease agreement." (Supp. J.A. 125.) Bashiti further argued that because he was a non-signatory to the lease, a tenancy at will was created between the parties, and accordingly, he never assented to the arbitration clause contained in the lease. In reply, Tutu Park filed a motion to enforce the arbitrator's award, which Bashiti opposed. Bashiti never moved in the Superior Court to modify or amend his filings in which he conceded the existence of an October 2004 lease. Instead, in his appellate brief, counsel characterizes these admissions as an "attorney['s] fail[ure] to correct a factual representation in an [a]nswer." (Appellant's Br. 4.) Further, on August 30, 2007, the parties executed an addendum to an October 2004 lease, which explicitly incorporated this lease by reference. In the addendum, the parties acknowledged that they were operating under an October 2004 lease and that Bashiti was delinquent in his rent payments, before delineating a payment schedule to address these arrearages. The parties also agreed that, except for the modifications enumerated in the addendum, "all remaining provisions of the lease shall remain in full force and effect." (Supp. J.A. 209.) The addendum bears Bashiti's signature, and Bashiti does not contest its authenticity.

In a memorandum opinion entered on December 24, 2015, the Superior Court denied Bashiti's motion to vacate the arbitrator's award, and the court also entered judgment enforcing the award. The court ruled that since Bashiti had not moved to amend his pleadings, he continued to represent to the court that the parties had entered into a valid lease in October 2004 for Unit 243. The court determined that Bashiti's statements constituted judicial admissions by which he was bound, and that as a result, Bashiti was foreclosed from raising factual assertions that directly contradicted his prior representations to the court. This timely appeal ensued.

## II. JURISDICTION AND STANDARD OF REVIEW

■ Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final

judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Ramirez v. People*, 56 V.I. 409, 416 (V.I. 2012) (citing *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008)). The Superior Court's December 24, 2015 order disposed of all outstanding motions and the claims raised therein, ending the litigation on its merits; therefore, we exercise jurisdiction over this appeal. *Tremcorp Holdings, Inc. v. Harris*, 65 V.I. 364, 367 (V.I. 2016) ("[T]he denial of a motion to vacate an arbitration award constitutes a final judgment for purposes of section 32(a).").

■ When presented with a court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (explaining that, when reviewing a trial court's confirmation of, or refusal to vacate an arbitration award, the reviewing court considers questions of law de novo, and reviews factual findings for clear error); *cf. Martin v. Martin*, 58 V.I. 620, 624-25 (V.I. 2013).

## III. DISCUSSION

### A. Bashiti, through his conduct, waived the issue of arbitrability.

■ While Bashiti is certainly correct that there must exist evidence that the parties to a dispute consented to arbitration, such consent may be implied by the parties' conduct. *LeNeve v. Via S. Florida, L.L.C.*, 908 So. 2d 530, 535 (Fla. Dist. Ct. App. 2005) (a non-signatory to an arbitration agreement may be found to have waived his right to litigate by actively participating in an arbitration); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." (citation omitted)); *see MBNA Am. Bank, N.A. v. Boata*, 283 Conn. 381, 926 A.2d 1035, 1041 (2007) ("Because the parties' mutual assent confers power on the arbitrator, a claim that an arbitrator lacks the authority to hear a matter can be waived and, once waived, cannot be reclaimed.").

It follows, therefore, that "if a party participates in arbitration proceedings without making a timely objection to the submission of the

dispute to arbitration, that party may be found to have waived its right to object to the arbitration." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003); *Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720, 379 U.S. App. D.C. 282 (D.C. Cir. 2008) ("[I]f a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may fairly be said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent."); *N.Y. City Dist. Council of Carpenters Pension Fund v. TADCO Constr. Corp.*, No. 07-CV-2712, 2008 U.S. Dist. LEXIS 14635, at *15 (S.D.N.Y. Feb. 28, 2008) (unpublished) (same).[3]

---

[3] Although we employ the waiver doctrine to affirm the Superior Court's decision, we recognize that that doctrine may not be the only legal basis for doing so. While numerous courts have concluded that a party may waive his or her ability to challenge an arbitrator's jurisdiction, the Supreme Court of the United States has indicated that the question of whether parties ever concluded an agreement to arbitrate is a question of law for the courts to decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303-04, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). In order to answer such a question, the Supreme Court instructs that courts should apply "ordinary [state law] principles that govern the formation of contracts" to determine whether the parties entered into such an agreement. *Id.* at 296 (citing *First Options of Chicago, Inc.*, 514 U.S. at 944). Courts that apply the waiver doctrine in the face of a challenge to the existence of an agreement to arbitrate do not reconcile that doctrine with the well-worn principles of contract formation.

Under those principles, contracts may be express or implied. *See Peppertree Terrace v. Williams*, 52 V.I. 225, 241 (V.I. 2009) (Swan, J., concurring) ("Contracts are traditionally classified as express, implied-in-fact, or implied-in-law." (quoting *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 677 A.2d 747, 752 (1996))); *accord Connor v. City of Dillon*, 2012 MT 21, 364 Mont. 8, 270 P.3d 75, 78 (2012); *see generally* 1 RICHARD A. LORD, WILLISTON ON CONTRACTS §§ 1:5-1:6 (4th ed. 2007) (discussing the proposition and collecting cases). An implied-in-fact contract "is 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.' " *Hercules Inc. v. United States*, 516 U.S. 417, 424, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996) (quoting *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 43 S. Ct. 425, 67 L. Ed. 816, 58 Ct. Cl. 709 (1923)). Agreements to arbitrate may share these characteristics, *see Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) ("In California, a 'clear agreement' to arbitrate may be either express or implied in fact.") (citation and internal quotation marks omitted)), and courts have recognized implied-in-fact agreements to arbitrate. *See, e.g., Socoloff v. LRN Corp.*, 646 Fed. Appx. 538, 539 (9th Cir. 2016) (explaining that, under California law, "an employee's agreement to arbitrate employment-related claims need not be express, and may be implied in fact," but finding no such contract on the facts of the case) (citing *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 145 Cal. Rptr. 3d 514, 282 P.3d 1217, 1224 (2012)); *Luden's, Inc. v. Local Union No. 6 of*

■ We are mindful that the Superior Court compelled Bashiti to arbitrate his dispute before the time permitted for him to respond to Tutu Park's motion to compel had expired. Also, Bashiti objected to the arbitrator's jurisdiction while the arbitration proceedings were underway. However, under the totality of the circumstances, Bashiti's conduct nevertheless evinces a waiver of his right to object to the arbitrator's jurisdiction. *See Wein v. Morris*, 194 N.J. 364, 944 A.2d 642, 653 (2008) (examining "the totality of circumstances to evaluate whether a party has waived the right to object to arbitration after the matter has been ordered to arbitration and arbitration is held"); *Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Ct.*, 123 Nev. 44, 152 P.3d 737, 740 (2007) ("[T]he waiver of a right may be inferred when a party engages in conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished.").

■ First, Bashiti failed to even raise the issue of arbitral jurisdiction with the Superior Court before the case was submitted to the arbitrator. Likewise, in the eighteen-month period which elapsed between the court's directive to arbitrate and the commencement of arbitration proceedings, Bashiti never opposed or sought reconsideration of the court's order. Instead, he fully participated in the arbitration process and belatedly objected on the final day of the hearing only after Tutu Park was unable to produce a signed lease. *See Commerce & Indus. Ins. Co. v. Nester*, 90 N.Y.2d 255, 682 N.E.2d 967, 970-72, 660 N.Y.S.2d 366 (1997) (although the trial court ordered arbitration, appellant "voluntarily and fully participated" without "availing itself of all its reasonable judicial remedies" to challenge arbitrability; therefore, an objection before the arbitrator did not preserve appellant's right to contest the arbitrator's award on grounds that no arbitration agreement existed); *Azcon Const. Co. v. Golden Hills Resort, Inc.*, 498 N.W.2d 630, 633 (S.D. 1993) ("[T]he right to raise an objection to [an arbitrator's] jurisdiction is preserved if it is made *in a timely manner before a hearing on the merits*.") (emphasis added); *see also Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1076-80 (Utah Ct. App. 1998) (party did not waive his right to challenge arbitrator's award where he first argued before the trial

---

*Bakery, Confectionary and Tobacco Workers' Int'l Union of Am.*, 28 F.3d 347, 349 (3d Cir. 1994) (concluding that a party's duty to arbitrate survived the termination of a collective bargaining agreement as an implied-in-fact contract).

court that no arbitration agreement existed between the parties, and then followed court's order to arbitrate).

Additionally, after the court directed the parties to arbitrate, Bashiti filed an answer and counterclaim with the American Arbitration Association ("AAA"), in which he represented that he was "a party to an arbitration clause contained in a written lease agreement dated October 11, 2004," and agreed to arbitrate pursuant to the Commercial Arbitration Rules of the American Arbitration Association. (Supp. J.A. 82.) Under Rule R-7(c) of these rules, "[a] party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection." Although Bashiti filed an answer to Tutu Park's arbitration complaint, he did not contest the arbitrator's jurisdiction in that filing. Bashiti's failure to object to the arbitrator's jurisdiction in accordance with the very rules to which he agreed to be bound further constitutes a waiver of his ability to raise such a challenge. *See, e.g., Anderson v. Golf Mill Ford, Inc.*, 383 Ill. App. 3d 474, 890 N.E.2d 1023, 1028, 322 Ill. Dec. 104 (2008) (waiver found where party agreed to arbitrate under the AAA's Commercial Arbitration Rules, failed to raise the issue of arbitrability as required by Rule R-7(c), and only challenged the arbitrator's jurisdiction during the arbitration hearing).

## IV. CONCLUSION

Although arbitration was court-ordered, Bashiti, through his conduct, waived his right to challenge the arbitrator's jurisdiction to determine the merits of the dispute between the parties. The Superior Court committed no error in declining to vacate the arbitrator's award, and accordingly, the Superior Court's December 24, 2015 order is affirmed.